PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 09-2528 & 09-4644
_____

WILLIAM A. MORGAN,

Appellant

v.

COVINGTON TOWNSHIP;
SGT. BERNARD KLOCKO, INDIVIDUALLY;
THOMAS M. YERKE, TOWNSHIP CHAIRMAN,
INDIVIDUALLY

_____

On Appeal from the United States District Court
For the Middle District of Pennsylvania
(D.C. Civil Action Nos. 3-07-cv-01972 and 3-09-cv-00651)
District Judge:  Honorable A. Richard Caputo

_____

Argued November 17, 2010
_____

Before:  AMBRO, FISHER
and GREENBERG, Circuit Judges

(Opinion filed:  August 2, 2011)

Cynthia L. Pollick, Esquire (Argued)
The Employment Law Firm
363 Laurel Street
Pittston, PA   18640-0000

      Counsel for Appellant

John G. Dean, Esquire
Paula L. Radick, Esquire
Joel M. Wolff, Esquire (Argued)
Elliott Greenleaf & Dean
201 Penn Avenue, Suite 202
Scranton, PA  18503-0000

      Counsel for Appellees

_____

OPINION OF THE COURT
_____

AMBRO, Circuit Judge

This case involves two lawsuits concerning the investigation and subsequent termination of plaintiff-appellant William Morgan, a former police officer with Covington Township, Pennsylvania.[1]  We reverse the District

---

[1] Covington Township is a defendant-appellee in this case, along with Morgan's police department supervisor, Sergeant Bernard Klocko, and the Chairman of the Board of

Court's decision to dismiss Morgan's second case on *res judicata* grounds and affirm in all other respects.

## I.     Background

In 2007, when the events underlying this case took place, Morgan was employed by Covington Township as a police officer. In July and August of that year, he was involved in two incidents that eventually resulted in disciplinary charges.

First, Morgan was accused of attempting to interfere in another officer's investigation of a "verbal altercation" between Morgan's ex-girlfriend, Jill Mailen, and a security guard, Carla Sodano. (This stemmed from Mailen's mistaken belief that Sodano was in a relationship with Morgan.) Following the altercation, Sodano made a complaint against Mailen, and Sergeant Klocko ordered the investigating officer to issue Mailen a citation. Sometime thereafter, Morgan— who had no official role in the investigation—reportedly approached Sodano's supervisor to ask whether she could be convinced to withdraw her complaint against Mailen. Additionally, Klocko asserted that Morgan then told him and the investigating officer that he (Morgan) was taking care of the situation and that the charges would be dropped. Morgan denies this assertion.

Second, Morgan entered the empty apartment of Jamie Villani, his most recent ex-girlfriend, possibly without

---

Supervisors of Covington Township, Thomas Yerke. We refer to the defendants collectively as "Covington."

3

permission. When Morgan left the apartment, he neglected to shut the back door. To state the obvious, Villani was surprised and upset when she arrived home. She reported this incident to Klocko.

On August 16, 2007, Klocko notified the Covington Township Board of Supervisors of these events, and asserted that they were part of a larger pattern of "inefficient performance of duties." In particular, Klocko characterized Morgan's intervention in the Mailen/Sodano situation as criminal conduct amounting to "official oppression, intimidation of witnesses or victims, and/or retaliation against witnesses, victim, or party." Klocko recommended that Morgan be suspended without pay. The next day, Covington Township filed disciplinary charges against Morgan and informed him that he had a right to respond to the charges in writing, to request a public hearing, and to be represented by counsel. Morgan, through counsel, invoked his right to a public hearing.

The disciplinary charges against Morgan were suspended shortly thereafter, when Klocko notified the Pennsylvania State Police of Morgan's possible commission of "official oppression," and placed Morgan on administrative leave with pay. The Pennsylvania State Police ultimately declined to investigate. Klocko then referred the case to the Lackawanna County District Attorney, who also declined to pursue the matter. Once those avenues were exhausted, Covington Township reinstituted the disciplinary charges against Morgan and added an additional charge of conduct unbecoming an officer. Morgan, who again requested a public hearing, was continued on paid administrative leave. Morgan's hearing was scheduled for November 5, 2007.

Before that hearing, Morgan filed a complaint in federal District Court ("*Morgan I*"). He alleged that all three Covington defendants had: 1) violated his procedural due process rights by publicizing the charges against him and failing to afford him a hearing before suspending him with pay; and 2) violated the First Amendment by retaliating against him for his decision to request a public hearing by referring for possible prosecution his intervention in the Mailen/Sodano situation. He also alleged that Covington Township had failed to train its employees, resulting in a constitutional injury to Morgan.

On March 6, 2009, following discovery, the District Court granted summary judgment to Covington on Morgan's due process claims. It concluded that Morgan was not entitled to a hearing before his suspension with pay because "[h]is private interest in having the opportunity to tell his side of the story before being placed on suspension is outweighed by the governmental interest in prompt action to protect the integrity of the police force." *Morgan v. Covington Twp.*, No. 3:07-cv-1972, 2009 WL 585480, at *8 (M.D. Pa. Mar. 6, 2009). It also rejected Morgan's reputational harm claim based on its conclusion that he failed to identify any instance in which any defendant publicly accused him of a crime. *Id.* at *9. However, the Court denied summary judgment as to Morgan's First Amendment retaliation claim.

In the meantime, Covington went ahead with Morgan's administrative hearing and, following its completion on January 15, 2008, the Board voted to terminate Morgan's employment. However, Morgan did not immediately seek to amend his complaint based on his termination. Rather, he did so on April 9, 2009, just two

5

weeks before his First Amendment claim was to go to trial. The District Court denied the motion to amend, ruling that it had come too late.

Later that day, Morgan filed a new complaint under a new case number ("*Morgan II*") alleging that the same three Covington defendants illegally retaliated against him by terminating his employment because he demanded a hearing and filed *Morgan I*. The new complaint also included the following footnote:

> After being notified by the Court this morning that the Court determined that Morgan's termination would not be included in as a claim in [*Morgan I*], Morgan files the instant complaint . . . . Morgan requests that this Complaint be consolidated with [*Morgan I*], and that all claims be heard before the same jury for the sake of judicial economy, consistency, and complete resolution of all claims against Defendants.

On April 20, 2009, trial began in *Morgan I*, which was not consolidated with *Morgan II*. During the trial, and of relevance to this appeal, Morgan was denied permission to call three rebuttal witnesses who, he asserted, would

6

undermine Klocko's and Yerke's credibility by rebutting their earlier testimony.[2] The District Court reasoned that

> [y]ou ask a question and you get an answer. That's the end of it if it's a collateral matter, and these are collateral matters. Whether or not somebody used public property, for example, he said no. And if you had evidence that he did, the time to have impeached him with it was then, not bring in another witness now and say, well, yeah, I know he used . . . public property, because then what we've done is we've joined issue on the question of did he or didn't he use . . . public property . . . . And then he'd be entitled to try the issue of whether or not he did. It's collateral. I'm not allowing it.

After trial was completed, Covington successfully sought a jury instruction that it should prevail if it would have referred Morgan's conduct to the State Police and the District Attorney even if he had not asked for a hearing. Morgan

---

[2] Morgan sought to call Scott Van Fleet to rebut Yerke's testimony that he (Yerke) never used Township property for personal use, Barbara Findeis to testify that Klocko had either done or requested "favors" in the past, and Brian Yeager to rebut testimony of Klocko that he had never charged anyone with the crime of official oppression.

7

objected that Covington had never pled this theory, which he characterized as an affirmative defense, and that it was therefore inappropriate to instruct the jury on it. However, the District Court agreed with Covington's counsel that whether it would have taken the same actions against Morgan (regardless of his First Amendment-protected activity) was not an affirmative defense, but rather "one of the elements . . . of the claim."

The jury found for all three Covington defendants. It first concluded that Morgan proved that the Township—though not Klocko or Yerke—retaliated against him for exercising his First Amendment right to petition. However, the jury also found that the Township established that it would have taken the same actions against Morgan even if he had not requested a hearing.

Several months later, in November 2009, the District Court dismissed *Morgan II*, concluding that it was barred by *res judicata* because it "arose out of the same transaction" and the "same operative facts at issue" as in *Morgan I*. *Morgan v. Covington Township*, 3:09-cv-00651, 2009 WL 3818431 at *4 (M.D. Pa. Nov. 12, 2009). Additionally, the Court reasoned that but for Morgan's decision to wait until just before trial to seek to amend his complaint to encompass his termination, that claim would have been heard in *Morgan I*. *Id.* at *5.

Morgan timely appealed the decisions in both cases.

## II.     Jurisdiction and Standard of Review

The District Court had jurisdiction over both *Morgan I* and *Morgan II* under 28 U.S.C. § 1331. We have jurisdiction

8

under 28 U.S.C. § 1291. We review *de novo* the District Court's decisions granting partial summary judgment to Covington in *Morgan I* and dismissing *Morgan II* on *res judicata* grounds. *Massie v. Dep't of Housing & Urban Dev.*, 620 F.3d 340, 347 (3d Cir. 2010); *Peduto v. City of North Wildwood*, 878 F.2d 725, 727 (3d Cir. 1989). We review for abuse of discretion both the District Court's refusal to allow Morgan to present "rebuttal" witnesses and its decision to instruct the jury on the "same action" defense to Morgan's First Amendment claim. *McKenna v. City of Phila.*, 582 F.3d 447, 462 (3d Cir. 2009); *Donlin v. Philips Lighting N. Am. Corp.*, 581 F.3d 73, 78 & 80 (3d Cir. 2009).

## III.    Analysis

On appeal, Morgan contends that: (1) the District Court erred by dismissing *Morgan II* because the event underlying that complaint—Morgan's termination from his job as a police officer—took place after *Morgan I* was filed; (2) Covington was not entitled to a jury instruction on the "same action" defense because it failed to plead that "affirmative defense" in its answer; (3) he should have been permitted to call Yerke's and Klocko's credibility into doubt through rebuttal witnesses; and (4) Covington was not entitled to summary judgment as to his due process claims. We discuss these arguments in turn.

## A.    The Application of *Res Judicata* to *Morgan II*

*Res judicata* promotes judicial economy and protects defendants from having to defend multiple identical or nearly identical lawsuits by "bar[ring] not only claims that were brought in a previous action, but also claims that could have

9

been brought." *In re Mullarkey*, 536 F.3d 215, 225 (3d Cir. 2008). It applies when there exists "(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action." *Id.* (quoting *Post v. Hartford Ins. Co.*, 501 F.3d 154, 169 (3d Cir. 2007)). However, our Court has not yet decided whether *res judicata* may apply to events, like Morgan's termination in this case, that postdate—but relate to—an earlier-filed lawsuit.

Morgan argues that the cut-off date for *res judicata* purposes was the date he filed *Morgan I*, and that he was therefore free to file a separate complaint based on his later termination. Covington counters that there is significant factual overlap between *Morgan I*—which has already been decided by a jury—and *Morgan II*, and that significant resources will be wasted if we allow those issues to be re-litigated.

Five other Courts of Appeals have already adopted a bright-line rule that *res judicata* does not apply to events post-dating the filing of the initial complaint. *Smith v. Potter*, 513 F.3d 781, 783 (7th Cir. 2008) ("Res judicata does not bar a suit based on claims that accrue after a previous suit was filed. . . . It does not matter whether, as in the case of harassment, the unlawful conduct is a practice, repetitive by nature . . . that happens to continue after the first suit is filed, or whether it is an act, causing discrete, calculable harm, that happens to be repeated."); *Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 529 (6th Cir. 2006) ("'Simply put, [Rawe] could not have asserted a claim that [she] did not have at the time'" the complaint was filed.) (citation omitted); *Mitchell v. City of Moore*, 218 F.3d 1190, 1202-03 (10th Cir. 2000)

10

("[W]e agree with those courts holding the doctrine of claim preclusion does not necessarily bar plaintiffs from litigating claims based on conduct that occurred after the initial complaint was filed."); *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 126 F.3d 365, 369-70 (2d Cir. 1997) ("For the purposes of *res judicata*, '[t]he scope of the litigation is framed by the complaint at the time it is filed.'") (citation omitted); *Manning v. City of Auburn*, 953 F.2d 1355, 1360 (11th Cir. 1992) ("[W]e do not believe that the res judicata preclusion of claims that 'could have been brought' in earlier litigation includes claims which arise after the original pleading is filed in the earlier litigation."); *see also Los Angeles Branch NAACP v. Los Angeles Unified Sch. Dist.*, 750 F.2d 731, 739 (9th Cir. 1984) (noting that *res judicata* would encompass acts "occurring prior to the commencement" of the prior litigation).

We see no reason to part with our sister Circuit Courts. A contrary rule would only invite disputes about whether plaintiffs could have amended their initial complaints to assert claims based on later-occurring incidents. *See* Fed. R. Civ. P. 15(a) (describing when parties may amend pleadings as of right, and when they must first seek leave from the court or the defendant's consent). That would be especially unwise in this area of the law, in which certainty and predictability are important. Further, we doubt that this rule will substantially increase the burdens on either courts or defendants.

We hold that *res judicata* does not bar claims that are predicated on events that postdate the filing of the initial

11

complaint, and thus we conclude that the District Court should not have dismissed the complaint in *Morgan II*.[3]

**B.      Covington's Entitlement to a Jury Instruction on the "Same Action" Theory**

Morgan argues that the District Court abused its discretion by instructing the jurors that Covington should prevail if it showed that it "would have reached the same decision . . . even in the absence of the protected conduct," *Mt. Healthy City Sch. Dist. Bd. of Ed. v. Doyle*, 429 U.S. 274, 287 (1977).   Specifically, Morgan contends that what he terms the *Mt. Healthy* "same action" defense is an affirmative defense that Covington waived by failing to plead it in its answer.   For its part, Covington argues that the same action defense is actually "the third step in a 'well established three-step test to evaluate a public employee's claim of retaliation for engaging in activity protected under the First Amendment.'"   Appellee Br. at 14 (quoting *Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005)).[4]   Covington adds that, in any event, Morgan has waived his argument by failing to object to the same action defense when Covington raised it at summary judgment.

---

[3] The concept of issue preclusion emerged at oral argument. In the event that the parties raise this issue on remand, the District Court can decide what, if any, effect the application of issue preclusion has in this case.

[4] The first two steps require the employee to show that "the activity is in fact protected," and "the protected activity 'was a substantial factor in the alleged retaliatory action.'"   *Hill*, 411 F.3d at 125 (citation omitted).

We need not decide whether Covington was required to raise its same action defense in its answer (or in a motion to amend its answer) because we agree that Morgan failed to object to it at summary judgment, and thereby waived his objection. In its memorandum in support of summary judgment, Covington raised the same action defense. While its discussion was brief, it was sufficient to prompt a one-page response from Morgan, who did not argue therein that the defense was waived. Undoubtedly, neither brief's discussion of the defense was robust. However, the deferential standard of review applicable to this issue leads us to conclude that the District Court did not err in instructing the jury on the same action defense.

## C. Morgan's Entitlement to Call Rebuttal Witnesses on Credibility Issues

Morgan argues that the District Court erred by refusing to allow him to call two witnesses—Van Fleet[5] and Findeis[6]—who would have testified that certain aspects of Yerke's and Klocko's testimony were untrue. We agree with Morgan that the District Court should have allowed this testimony, but conclude that he failed to carry his burden of showing that the error so affected his "substantial rights," Fed. R. Civ. P. 61, that he is entitled to a new trial.

---

[5] Morgan's counsel explained that she wanted to call Van Fleet because he could show that Yerke's testimony that "he never used Covington property for personal use" was "a lie." App. 652.

[6] Findeis was to testify that Klocko had "done favors" for others in the course of his duties. *Id*. at 652.

The District Court concluded that "collateral" issues were impermissible subjects of rebuttal testimony. Picking up on that reasoning, Covington argues that the proffered testimony is covered by Federal Rule of Evidence 608(b), which forbids parties from proving "[s]pecific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' character for truthfulness," through "extrinsic evidence."

Covington and the District Court overlook the crucial fact that Morgan sought to contradict specific testimony offered under oath, rather than simply to suggest that Yerke or Klocko had engaged in dishonest behavior on some other occasion. In other words, Morgan sought to engage in "impeachment by contradiction," which is not covered by Fed. R. Evid. 608. *United States v. Castillo*, 181 F.3d 1129, 1132-33 (9th Cir. 1999) (Rule 608(b) excludes only extrinsic evidence that goes to a witness's general credibility, but the doctrine of impeachment by contradiction "permits courts to admit extrinsic evidence that specific testimony is false, because contradicted by other evidence."); *United States v. Lopez*, 979 F.2d 1024, 1033-34 (5th Cir. 1992) (noting that Rule 608 does not apply to impeachment by contradiction). Our Court has previously described impeachment by contradiction as "a means of policing the defendant's obligation to speak the truth in response to proper questions," something limited by Fed. R. Evid. 403, which permits courts to exclude evidence if its probative value is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." *United States v. Gilmore*, 553 F.3d 266, 271 (3d Cir. 2009) (citation and quotation marks

14

omitted).  Here, the District Court did not analyze whether the probative value of Morgan's proffered evidence was "substantially outweighed by" any of the considerations in Fed. R. Evid. 403, as it needed to do.  Thus, it should not have excluded Morgan's proposed rebuttal testimony.

Nonetheless, as both the Federal Rules of Civil Procedure and the Federal Rules of Evidence make clear, "[a]n error that is harmless is not grounds for disturbing a judgment." *Burkhart v. Washington Metro. Area Transit Auth.*, 112 F.3d 1207, 1214 (D.C. Cir. 1997) (citing Fed. R. Civ. P. 61); *see also* Fed. R. Evid. 103 ("Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of a party is affected."); Fed. R. Civ. P. 61 ("Unless justice requires, no error in admitting or excluding evidence . . . is ground for granting a new trial . . . . At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights.").  Moreover, as this is a civil case, it is Morgan's burden to show that the District Court's error was harmful. *See Shinseki v. Sanders*, 129 S. Ct. 1696, 1706 (2009).  Yet, Morgan does not argue as much in his brief, and our own review of the record suggests the reason why.

Van Fleet was to testify concerning Yerke's personal use of Township property, in response to the latter's testimony that he had neither done so nor been ordered by a court to stop doing so.  Yerke's testimony was elicited during cross-examination, and was preceded by an exchange that we believe substantially reduced the need for Van Fleet's testimony.  Specifically, Morgan's counsel raised the issue, and after Covington objected, the Court held a side-bar conversation with the two lawyers.  During that colloquy,

15

Yerke's counsel observed that Yerke's personal use of a backhoe owned by Covington was "[t]he subject of a litigation in Lackawanna County." The Court overruled the objection, and Morgan's counsel asked Yerke if he had "been accused of using . . . Covington Township equipment for [his] personal use," to which Yerke answered "[b]y who?" Yerke's counsel objected, and the Court asked whether the question went to "an accusation or a concluded matter that's been adjudicated." Morgan's counsel replied that she did not "know the particulars of it." Yerke then denied having used the property and having been ordered to stop using the property.

We believe this exchange would have alerted the jury that, though Yerke denied it, he had at least been accused of misusing Township property. This would have permitted the jury to infer that there was a dispute whether Yerke had testified truthfully. We do not think that Van Fleet's testimony amplifying that dispute would have meaningfully affected Morgan's rights.

Morgan's position as to Findeis is even weaker. The latter was to testify that Klocko had previously "done favors." This testimony was intended to rebut Klocko's testimony during the following exchange:

> Q. Sergeant Klocko, you've asked people in law enforcement for favors, correct?
>
> A. Specify favors.
>
> Q. If you can help somebody out?
>
> A. I don't recall a specific situation.

16

App. 179. Then, Covington's attorney objected and the Court sustained the objection; Morgan does not argue on appeal that the objection was improperly sustained.

We conclude that Klocko's testimony was simply too vague and attenuated for the District Court's exclusion of Findeis's testimony to have harmed Morgan. Morgan's counsel asked very general questions about favors—not even improper favors—and Klocko's response was far from a categorical denial. Thus, even if Findeis had testified that Klocko had asked her for a favor (or asked someone else for a favor on her behalf), that testimony would not have directly contradicted Klocko.

Accordingly, we cannot conclude that the District Court's exclusion of Yerke's and Findeis's testimony affected Morgan's substantial rights.[7]

---

[7] We note that Morgan does not make an argument with respect to Yeager, from whom he also sought to elicit rebuttal testimony at trial. If Morgan had made such an argument, though, it would have failed. Morgan proffered that Yeager would testify that Klocko had previously accused someone of "official oppression." This testimony would not have meaningfully contradicted Klocko's testimony that he had previously been the "victim" of official oppression, but that the Board of Supervisors had been the body that made the formal "charge[]" arising out of that situation. Accordingly, Yeager's testimony would not have qualified as impeachment by contradiction.

17

### D.    Morgan's Due Process Claims

We have reviewed Morgan's challenges to the District Court's grant of summary judgment to Covington on Morgan's due process claims. We discern no error in the District Court's opinion.

Morgan articulated two due process claims in his complaint. The first was that he was deprived of his property interest in his job without due process of law when he was suspended with pay without a hearing. The second was that he was deprived of his liberty interest in his reputation when he was publicly accused of committing the crime of official oppression.

As the District Court held, Morgan had a property interest in his job to which due process rights attached. However, we agree with it that Morgan's interest in receiving a hearing before his suspension with pay was outweighed by Covington's interest in maintaining the integrity of its police force. This was particularly so given that Covington collected and reviewed witness statements and other documentation concerning Morgan's performance before imposing the suspension.

Likewise, we agree with the District Court that Morgan's claim based on harm to his reputation fails. To succeed, Morgan would have to show that Covington publicized a false, stigmatizing statement about him. *Hill v. Borough of Kutztown*, 455 F.3d 225, 236 (3d Cir. 2006). However, the District Court concluded that Morgan failed to show that Covington publicly accused him of official oppression, and our review of the record does not support a

different conclusion. *See Brandt v. Bd. of Co-op Educ. Servs.*, 820 F.2d 41, 45 (2d Cir. 1987) (placement of letter in personnel file can constitute "publicity" only if the plaintiff can show the file is likely to be disclosed to prospective employers) (collecting cases).

\*   \*   \*   \*   \*

For the reasons set forth above, we affirm the District Court's entry of judgment in *Morgan I*, reverse its entry of judgment in *Morgan II*, and remand that case for further proceedings.