**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
———

No. 12-2368
———

EDWARD CHRYSTAL
Appellant

v.

NEW JERSEY DEPARTMENT OF LAW AND PUBLIC SAFETY,
DIVISION OF STATE POLICE
———

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 3-11-cv-02455)
District Judge: Honorable Joel A. Pisano
———

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
June 11, 2013

Before: SCIRICA, HARDIMAN, and VAN ANTWERPEN, *Circuit Judges*

(Filed: June 12, 2013)
———

OPINION OF THE COURT
———

VAN ANTWERPEN, *Circuit Judge*.

Edward Chrystal ("Appellant") appeals from an order of the District Court for the

District of New Jersey entering summary judgment in favor of the New Jersey

Department of Law and Public Safety ("Appellee"). Appellant brought suit in federal

court, claiming that he was improperly denied promotions in the New Jersey State Police. He had previously raised similar claims in New Jersey state court. For the reasons that follow, we agree that this appeal is barred by Appellant's prior action in state court and, in particular, by New Jersey's entire controversy doctrine. We will therefore affirm the District Court.

## I. Background

Appellant has been employed by the New Jersey State Police ("NJSP") for more than two decades. He also serves as a Lieutenant Colonel in the New Jersey National Guard. After the Hurricane Katrina disaster, Appellant was ordered to active duty by the United States Army between September 28, 2005 and November 11, 2005 and was deployed in New Orleans, Louisiana. Appellant alleges that before his 2005 deployment, he was told by his NJSP supervisor that he would be promoted from Sergeant to Sergeant First Class ("SFC"). But upon his return from his 2005 deployment, the NJSP had promoted two other Sergeants to SFC, both of whom Appellant claims were less qualified. In August 2006, Appellant requested a thirty day military leave from the NJSP, which purportedly caused another less-qualified Sergeant to be promoted to SFC. These events formed the basis of a Complaint which Appellant filed in New Jersey State Superior Court ("the State Action") in January 2007. The Complaint alleged violations of the Uniform Service Employment and Reemployment Rights Act, 38 U.S.C. § 4301, *et seq.* ("USERRA"), and the New Jersey Law Against Discrimination, N.J.S.A. 10:5-12(a) ("NJLAD").

2

While the State Action was pending, Appellant was again called for active duty, this time in Iraq, from September 2008 to June 2009. Appellant claims more promotions were made during that time, this time of SFCs to Lieutenants. When Appellant learned of these new promotions in August 2009, his counsel brought it to the attention of the court in the State Action. In response, on September 15, 2009, Appellee, the defendant in the State Action, filed a motion in limine to prohibit introduction of any evidence of the SFC-to-lieutenant promotions at trial.

Appellee served this motion to Appellant by overnight mail, pursuant to New Jersey Rule of Court 1:5-2. The proof of delivery shows that the motion arrived at Appellant's counsel's office the following day, on September 16, 2005. Later, on November 17, 2009, Appellee faxed a copy of its proposed order with respect to the motion in limine to Appellant's counsel, which Appellee had inadvertently neglected to include in the original motion. Appellant's counsel alleges that this fax, and not the original service, was his first notice of the motion. Nonetheless, the motion was granted, unopposed, on December 1, 2009. Appellant's first response to that motion was on January 5, 2010, when he filed a motion requesting that the court vacate the resulting order. That motion was denied on January 22, 2010. Trial in the State Action was held from January 28, 2010 through February 18, 2010. On April 22, 2010, a final judgment was issued in Appellant's favor, and awarded him monetary damages for Appellee's violations of USERRA and NJLAD.

The Complaint in this action ("the Federal Action") was filed on April 28, 2011. In the Federal Action, Appellant sought relief for the SFC-to-lieutenant promotions, the

3

evidence of which was the subject of the motion in limine in the State Action. In response to the Complaint, Appellee filed a motion for summary judgment, arguing that the Federal Action is barred by the entire controversy doctrine and issue preclusion. That motion was granted on April 23, 2012. The District Court found that Appellant's claim in the Federal Action is barred by New Jersey's entire controversy doctrine; and, pursuant to the *Rooker-Feldman* doctrine, the District Court also refused to address the merits of the state court's orders with respect to the motion in limine. Appellant then timely appealed.[1]

## II. Analysis

We exercise plenary review over the District Court's entry of summary judgment. *Kautz v. Met-Pro Corp.*, 412 F.3d 463, 466 (3d Cir. 2005). Summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In making our determination, we draw all reasonable factual inferences in favor of Appellant. *See Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 511–12 (3d Cir. 1994).

The sole issue before us is whether New Jersey's entire controversy doctrine precludes Appellant from bringing his claim in the Federal Action.[2] If it does, the District Court's entry of summary judgment on behalf of Appellee was proper.

---

[1] The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367. We have jurisdiction pursuant to 28 U.S.C. § 1291.

[2] The District Court also concluded that "[t]o the extent that [Appellant] contests the state court's ruling granting [NJSP's] motion in limine, or contests the court's ruling denying his subsequent motion to vacate," his attack was barred by the *Rooker-Feldman*

4

This case is about the impact of state judgments in federal courts. Pursuant to the Full Faith and Credit Clause[3] of the Federal Constitution, and its implementing statute,[4] "[i]t is now settled that a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 80–81 (1984). *See also Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 466 (1982).

> Indeed, though the federal courts may look to the common law or to the policies supporting res judicata and collateral estoppel in assessing the preclusive effect of decisions of other federal courts, Congress has specifically required all federal courts to give preclusive effect to state-

doctrine, which generally states that lower federal courts are without power to review state court decisions. *See Parkview Assocs. P'ship v. City of Lebanon*, 225 F.3d 321, 324–25 (3d Cir. 2000) (citing *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983)) (discussing *Rooker-Feldman* doctrine). As noted above, that the state court granted the motion in limine precluded Appellant from introducing any evidence regarding the SFC-to-lieutenant promotions in the State Action. Appellant does not challenge this conclusion, and "has no intention to directly or indirectly contest[] the state court's order in limine." (Reply Brief on Behalf of Appellant at 8–9; *see also* Brief on Behalf of Appellant at 19–20.) Accordingly, that issue is not before us. But even if it were, we would be without power to review the state court's order with regard to the motion in limine. *See Lance v. Dennis*, 546 U.S. 459, 460 (2006) (per curiam) ("The *Rooker-Feldman* doctrine prevents the lower federal courts from exercising jurisdiction over cases brought by 'state-court losers' challenging 'state-court judgments rendered before the district court proceedings commenced.'" (quoting *Exxon Mobile Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005))).

[3] "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof." U.S. CONST., art. IV, § 1.

[4] The Federal Full Faith and Credit Statute provides, in pertinent part, that "[s]uch acts, records and judicial proceedings . . . shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken." 28 U.S.C. § 1738.

court judgments whenever the courts of the State from which the judgments emerged would do so . . . .

*Allen v. McCurry*, 449 U.S. 90, 96 (1980). *Accord* RESTATEMENT (SECOND) OF JUDGMENTS § 86 (1982).

In New Jersey, the entire controversy doctrine "is an extremely robust claim preclusion device that requires adversaries to join all possible claims stemming from an event or series of events in one suit." *Paramount Aviation Corp. v. Agusta*, 178 F.3d 132, 135 (3d Cir. 1999). *See also* N.J. CT. R. 4:30A; *In re Mullarkey*, 536 F.3d 215, 229 (3d Cir. 2008). The doctrine prevents a party from withholding part of a controversy to litigate later, even if the withheld claim constitutes a separate and independent cause of action. *See Mullarkey*, 536 F.3d at 229. As the Supreme Court of New Jersey has explained:

> the entire controversy doctrine seeks to assure that all aspects of a legal dispute occur in a single lawsuit. The goals of the doctrine are to promote judicial efficiency, assure fairness to all parties with a material interest in an action, and encourage the conclusive determination of a legal controversy.

*Olds v. Donnelly*, 696 A.2d 633, 637 (N.J. 1997). *See also Paramount Aviation Corp.*, 178 F.3d at 137 (citing *DiTrolio v. Antiles*, 662 A.2d 494, 502 (N.J. 1995)).

New Jersey's entire controversy doctrine has "evolved over time through the common law." *Mystic Isle Dev. Corp. v. Perskie & Nehmad*, 662 A.2d 523, 529 (N.J. 1995). The doctrine "requires a court to adjudicate both equitable and legal issues arising from one underlying transaction." *Id.* It extends to "all affirmative claims that a party might have against another party, including counterclaims and cross-claims," and "parties with a material interest in the controversy." *Id.* It also applies to "constituent claims that

6

arise during the pendency of the first action that were known to the litigant." *Id.* At bottom, it is the "commonality of facts, rather than the commonality of issues, parties or remedies that defines the scope of the controversy and implicates" the doctrine. *DiTrolio*, 662 A.2d at 504.

But the doctrine is an equitable one, and "[t]he 'polestar of the application of the rule is judicial fairness.'" *Id.* (quoting *Reno Auto Sales, Inc. v. Prospect Park Sav. and Loan Ass'n*, 581 A.2d 109, 113 (N.J. App. Div. 1990)) (internal quotation marks omitted). As a result, the doctrine "does not apply to bar component claims that are either unknown, unarisen or unaccrued at the time of the original action." *K-Land Corp. No. 28 v. Landis Sewerage Auth.*, 800 A.2d 861, 869 (N.J. 2002) (quoting *Hillsborough Twp. Bd. of Educ. v. Faridy Thorne Frayta, P.C.*, 728 A.2d 857, 860 (N.J. App. Div. 1999)). And "[i]n considering fairness to the party whose claim is sought to be barred, a court must consider whether the claimant had a fair and reasonable opportunity to have fully litigated that claim in the original action." *Id.* at 870 (quoting *Hillsborough Twp. Bd. of Educ.*, 728 A.2d at 861) (internal quotation marks omitted).

Appellant argues the doctrine does not bar him here because his claim had not "accrued" at the time of the State Action. He also argues that it would be unfair to bar his claim because of a lack of commonality with regard to the facts underlying the claims in the State Action and the Federal Action. He also asserts he did not have a full and fair opportunity to litigate his SFC-to-lieutenant promotion claim in the State Action. These arguments fail.

Appellant argues that, because he could only be promoted to lieutenant if he held the rank of SFC, his claim underlying the Federal Action did not "accrue" until August 2010—eight months after the jury verdict was entered in the State Action—when his seniority date was corrected to reflect the fact that he had been retroactively promoted to SFC. He admits that "it would have made sense to try the lieutenant's promotion claim before the same Judge and same jury." But Appellant asserts that he was ineligible for promotion to lieutenant until he succeeded on the merits of his SFC promotion claim, and his seniority date was corrected. As a result, he argues that his SFC-to-lieutenant promotion claim had not accrued at the time of the State Action.[5]

In New Jersey, generally, "a cause of action accrues when any wrongful act or omission resulting in any injury, however slight, for which the law provides a remedy, occurs." *Beauchamp v. Amedio*, 751 A.2d 1047, 1050 (N.J. 2000). The only exception is "where the victim either is unaware that he has been injured or, although aware of an injury, does not know that a third party is responsible." *Id.* Here, Appellant was injured the moment NJSP allegedly promoted unqualified SFCs to lieutenant. And Appellant knew about that injury in August 2009, before trial had begun in the State Action. As a

---

[5] Appellant also cites *Morgan v. Covington Township*, 648 F.3d 172 (3d Cir. 2011) to support his argument that any claim based on acts postdating the filing of a complaint are not barred under the entire controversy doctrine, and therefore can be asserted in later litigation. True, that is the rule in this Circuit with regard to claims predicated on events that postdate the filing of a federal complaint in a United States District Court. *See id.* at 178. But that is not the rule in New Jersey. *See Mystic Isle Dev. Corp.*, 662 A.2d at 529 (entire controversy doctrine "applies to constituent claims that arise during the pendency of the first action that were known to the litigant"). It would be improper for us to impose our decisions regarding federal concepts of res judicata upon a state-based preclusion doctrine. *See Allen*, 449 U.S. at 96.

8

result, the entire controversy doctrine bars his claim because it had "accrued" and was known to him during the pendency of the State Action. *See Circle Chevrolet Co. v. Giordano, Halleran & Ciesla*, 662 A.2d 509, 513 (N.J. 1995), *abrogated on other grounds by Olds*, 696 A.2d at 633 ("The entire controversy doctrine applies to constituent claims that arise during the pendency of the first action that were known to the litigant."). Under New Jersey law, his claim should have been brought in the State Action, even if his "right" to retroactive promotion from SFC to lieutenant was dependent on the jury finding he had a "right" to retroactive promotion to SFC and the subsequent correction to his seniority date. *Cf. Bendar v. Rosen*, 588 A.2d 1264, 1273 (N.J. App. Div. 1991) (entire controversy doctrine applied to bar a subsequent claim for contribution, requiring a cross-claim in the underlying tort action, although "technically a right of contribution does not arise until a tortfeasor has paid more than his pro rata share"). Appellant himself admits that litigating the two claims together would have "made sense."

Appellant further argues that there is not sufficient commonality of facts for the entire controversy doctrine to apply. This is simply not the case here, as both claims "arise[] from a core set of related factual circumstances," *DiTrolio*, 662 A.2d at 504—namely, that NJSP discriminated against Appellant because of his active service in the military. Furthermore, Appellant had a fair and reasonable opportunity to raise his SFC-to-lieutenant promotion claim in the State Action. Upon discovery of the SFC-to-lieutenant promotions in August 2009, Appellant had ample time to amend his original

9

complaint. And even assuming original service of the motion in limine was improper,[6] and the November 17, 2009 fax was Appellant's first notice of Appellee's motion, Appellant's only response came over a month after the motion had been granted,[7] via his request that the state court vacate its order. Accordingly, Appellant "had ample opportunity to have fully litigated the claim in the first action; he simply chose not to." *Id.* at 506.

Accordingly, Appellant has identified no basis in law or fact as to why the entire controversy doctrine should not act to bar his claim here in the Federal Action. The District Court's entry of summary judgment in Appellee's favor was appropriate.

### III. Conclusion

For the foregoing reasons, the Order of the District Court granting NJSP's motion for summary judgment is affirmed.

---

[6] Appellant explains that his failure to respond to the NJSP's motion in limine was caused, at least in part, by failure of the delivery service to realize that counsel and all who worked at counsel's office entered the building through the back door. Because the delivery service instead left the motion at the front door, counsel alleges that he never received the motion. Even if we were to read Appellant's briefs liberally so as to raise an adequacy of service argument, service here was proper. *See* N.J. Ct. R. 1:5-2 ("Service upon an attorney . . . shall be made by mailing a copy to the attorney at his or her office by ordinary mail . . . ."); *cf. O'Connor v. Altus*, 335 A.2d 545, 556 (N.J. 1975) ("An elementary and fundamental requirement of due process in any proceeding . . . is notice reasonable calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.").

[7] All in all, a month-and-a-half after Appellant admits having received notice of the motion.