**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-1557
_____

IN RE: BLACKROCK MUTUAL FUNDS ADVISORY FEE LITIGATION

Owen Clancy, Cindy Tarchis and Brendan Foote,
on behalf of the BlackRock Global Allocation Fund
and the BlackRock Equity Dividend Fund,
                                                                Appellants

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Nos. 3-14-cv-01165, -01991, -02097, -02863, -01403)
District Judge: Honorable Freda L. Wolfson
_____

Submitted Under Third Circuit LAR 34.1(a)
January 22, 2020

Before: AMBRO[*], MATEY and FUENTES, *Circuit Judges.*

(Filed: May 28, 2020)

---

[*] The Honorable Thomas A. Ambro recused himself from this matter after submission but before this opinion was filed. This opinion is filed by a quorum of the panel pursuant to 28 U.S.C. § 46(d) and Third Circuit I.O.P. Chapter 12.

_____

OPINION[†]

_____

MATEY, *Circuit Judge*.

Some shareholders (the "Shareholders") of two mutual funds found the fees charged by BlackRock, their investment advisor, a little too high. Perhaps far too high. In any case, their counsel registered their displeasure through a lawsuit under Section 36(b) of the Investment Company Act ("ICA"), codified at 15 U.S.C. § 80a–35(b), alleging breach of fiduciary duty. The District Court narrowed the dispute by granting BlackRock partial summary judgment and then, after a trial, found insufficient support for the Shareholders' remaining claims. Finding no error in either decision, we will affirm.

## I. BACKGROUND

BlackRock manages two mutual funds known as the BlackRock Global Allocation Fund and the BlackRock Equity Dividend Fund (the "Advisory Funds").[1] BlackRock also serves as the Advisory Funds' investment manager, supervising all of their day-to-day operations. BlackRock received compensation for that work, receiving "Advisory Fees" representing a fixed percentage of the Advisory Funds' assets. These services are not unique to the Advisory Funds, and other financial institutions also hire BlackRock for portfolio management. For example, it provides investment management services to a

---

[†] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

[1] "BlackRock" collectively refers to Defendants BlackRock Advisors, LLC; BlackRock Investment Management, LLC; and BlackRock International Limited.

2

group of insurance companies, which includes managing seven smaller mutual funds (the "Subadvisory Funds"). The Subadvisory Funds also pay BlackRock management fees (the "Subadvisory Fees"). A contract governs all of this advisory work, overseen by BlackRock's board of directors ("the Board")[2] directing the Advisory Funds, and separate boards directing the Subadvisory Funds. The Board annually reviews its management agreements and sets BlackRock's advisory fees.

And that brings us to this dispute, where the Shareholders claim the Advisory Fees that the Advisory Funds paid to BlackRock beginning in 2013 were excessive under Section 36(b) of the ICA. 15 U.S.C. § 80a–35(b). The Shareholders make a simple argument: BlackRock provides roughly the same management services to the Advisory and Subadvisory Funds, yet the Advisory Fees cost more. The District Court granted BlackRock partial summary judgment, holding the Board approval of the Advisory Fees deserved deference. Then, following a trial, the District Court found the Shareholders failed to prove BlackRock charged excessive fees. The Shareholders timely appealed, and we will affirm both the pretrial and post-trial decisions of the District Court.[3]

## II. BLACKROCK DID NOT BREACH ITS FIDUCIARY DUTY

The ICA both "impose[s] upon investment advisers a fiduciary duty with respect to compensation received from a mutual fund" and "grant[s] individual investors a private right of action for breach of that duty." *Jones v. Harris Assocs. L.P.*, 559 U.S. 335, 340

---

[2] The Board of Directors for the Global Allocation Fund is made up of the same people who make up the Board of Trustees for the Equity Dividend Fund.

[3] The District Court had jurisdiction under 15 U.S.C. §§ 80a–35(b)(5), 80a–43, and 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1291.

(2010) (internal quotation marks omitted). An actionable breach of duty can include a management fee "so disproportionately large that it bears no reasonable relationship to the services rendered and could not have been the product of arm's-length bargaining." *Id.* at 346. Unreasonableness turns on "all relevant circumstances," *id.* at 347, including, for example, the fees of similarly situated funds, profitability, and economies of scale, *see id.* at 344 & n.5 (citing *Gartenberg v. Merrill Lynch Asset Mgmt., Inc.*, 694 F.2d 923, 929–32 (2d Cir. 1982)). We turn to those circumstances.

## A.    The Board's Robust Procedures Deserve Substantial Deference

First, we consider the District Court's grant of partial summary judgment,[4] mindful that "[w]here a board's process for negotiating and reviewing investment-adviser compensation is robust, a reviewing court should afford commensurate deference to the outcome of the bargaining process." *Id.* at 351. Applying that standard, the District Court held it was "beyond dispute" that the Advisory Funds' Board performed an independent and adequate review. (App. at 38.) And with independence and rigor comes "considerable weight" to its decision. *Jones*, 559 U.S. at 351.

---

[4] We review a grant of partial summary judgment de novo. *Morgan v. Covington Township*, 648 F.3d 172, 177 (3d Cir. 2011). Summary judgment is appropriate if, drawing all inferences in favor of the non-moving party, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 770 (3d Cir. 2018). "An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit[.]" *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006).

Not so, say the Shareholders. They point to alleged misrepresentations and omissions by BlackRock they claim tainted the Board's review. It is true that when a "board's process was deficient or the adviser withheld important information," courts must take a closer look at the outcome. *Id.* But even a closer look at the undisputed facts about the Board's composition and actions bolsters, rather than undermines, the approval process.

First, the Shareholders point to a checklist given to the Board that outlines support services offered to the Advisory Funds and the Subadvisory Funds. The Shareholders argue the checklist does not provide a full picture of the management duties of the different funds. But as the District Court explained, the Board received many other materials highlighting the different management tasks, grounding the conclusion that the services offered to the Subadvisory Funds were not comparable to those of the Advisory Funds. *See Goodman v. J.P. Morgan Inv. Mgmt., Inc.*, 954 F.3d 852, 865–66 (6th Cir. 2020) ("although [the adviser] may not have presented to the Board all the information [plaintiffs] wanted, the Board still engaged in a thoughtful review process that considered substantial information from [the adviser] about the Funds and Subadvised Funds, as well as information from independent third parties"). In other words, the Board had ample information detailing the differences between the Advisory and Subadvisory Funds, regardless of any omissions in the checklist.

Second, the Shareholders allege that BlackRock failed to quantify the full cost of their support services, including possible economies of scale. But the Board determined that it did not need the cost information to determine that the Subadvisory Funds were not

5

comparable. Even so, the Board had access to information explaining efficiencies and scale when making its decisions.

Finally, the Shareholders contend that the Board just didn't drive a hard enough bargain, and merely rubberstamped the requested fees. But more than once, the Board did negotiate in favor of the Advisory Funds. That is enough for arm's-length bargaining. *Jones*, 559 U.S. at 352 (prohibiting courts from "second-guessing . . . informed board decisions" and "engag[ing] in a precise calculation of fees representative of arm's-length bargaining").

In all, the Shareholders do not point to anything substantial enough to suggest the Board's process was so flawed that it did not deserve "commensurate deference," *id.* at 351, particularly given what we know about the Board. It met annually to consider the Advisory Fees, and then again to vote on their approval. The Board reviewed a cornucopia of documents detailing the Advisory Funds. It posed questions to BlackRock, generating hundreds of pages of response, and won concessions on behalf of the Advisory Funds. A majority of the directors are independent, and all have substantial professional experience. This is precisely the sort of robust detached review expected under *Jones*. Thus, "where the watchdogs have done precisely" what is required of them, they should not "be totally muzzled," and the District Court's grant of partial summary judgment was not erroneous. *Id.* at 349 (internal quotation marks omitted).

6

**B.     The District Court Did Not Commit Clear Error in its Post-Trial Holdings**

"On appeal from a bench trial, our court reviews a district court's findings of fact for clear error and its conclusions of law *de novo*." *VICI Racing, LLC v. T-Mobile USA, Inc.*, 763 F.3d 273, 282–83 (3d Cir. 2014). Clear error requires findings "completely devoid of minimum evidentiary support displaying some hue of credibility or bear[ing] no rational relationship to the supportive evidentiary data." *Berg Chilling Sys., Inc. v. Hull Corp.*, 369 F.3d 745, 754 (3d Cir. 2004). And we give "even greater deference to the trial court's findings" when they "are based on determinations regarding the credibility of witnesses." *Anderson v. Bessemer City*, 470 U.S. 564, 575 (1985). As compelling arguments and corroborating facts buttress the District Court's holdings, the Shareholders cannot meet this exacting standard.

1.     Comparative Fee Structure

The Shareholders contend that the District Court should have compared the Advisory Funds' fees with those of the Subadvisory Funds. But the District Court's detailed analysis of the issue shows that, though there is overlap, the services offered in the two types of mutual funds are likely too different to warrant a comparison. *See Goodman*, 954 F.3d at 858 (finding "comparisons to the Subadvised Funds were inapt"). Rather, the fees were "squarely in line with their peers during the relevant period, typically falling in the second and third quartiles." (App. at 156.) And while the Shareholders' expert offered a different view, the District Court described him as "lacking," "unprepared," and not "particularly helpful, knowledgeable, or convincing in his opinions on the issues." (App. at 140 n.28.) Those credibility assessments, of course, receive significant deference.

7

*Anderson*, 470 U.S. at 575. All things considered, the District Court's conclusion that the Subadvisory Funds were not comparable is not "completely devoid of minimum evidentiary support." *Berg Chilling Sys.*, 369 F.3d at 754.

2. Profitability

The Shareholders argue that BlackRock's profits on the fees were exorbitant. Naturally, BlackRock is free to earn a profit. *See Jones*, 559 U.S. at 346. Rather, we are concerned only with fees "so disproportionately large that . . . [they] could not have been the product of arm's-length bargaining." *Id.* That leaves the Shareholders forced to argue, again, that the fees must be too high, because they exceeded those paid by the Subadvisory Funds. But, again, the District Court reasonably found that the two types of funds are not comparable; the Shareholders' expert who described them as comparable was not all that credible; and the Advisory Funds' fees were reasonable compared to its competitors. So again, there was no clear error.

3. Economies of Scale

Finally, the Shareholders argue that there must have been efficiencies generated by the economies of scale as the Advisory Funds grew, meaning BlackRock enjoyed greater gains without greater costs. They rely on a quantitative analysis by the same expert the District Court did not find credible. In his analysis, the expert relied on estimates he gathered from various BlackRock documents. Instead, the District Court was persuaded by BlackRock's expert and other witnesses who testified that the Shareholders' conclusions

8

improperly extrapolated estimates into incongruous contexts. We see no basis to disagree with the District Court's considered and balanced findings.

### III. CONCLUSION

For these reasons, we will affirm the District Court.