615 A.2d 910

BIG BEAVER FALLS AREA SCHOOL DISTRICT, Petitioner,

v.

Hope JACKSON, By and Through her mother and next friend, Delores NESMITH, and Delores Nesmith, individually, Respondents.

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 10, 1992.

Decided Sept. 1, 1992.

John J. Petrush, for petitioner.

Eugene A. Lincoln, for respondents.

Before PALLADINO and PELLEGRINI, JJ., and NARICK, Senior Judge.

PELLEGRINI, Judge.

Big Beaver Falls Area School District (District) appeals the decision of a Special Education Appeals Review Panel of the Commonwealth of Pennsylvania (Appeals Panel) finding that student Hope Jackson's (Hope) individualized education program (IEP) was not appropriate under the Individuals with

Disabilities Education Act (IDEA)[1] and state regulations,[2] and ordering compensatory education.

The IDEA requires that for a state to receive federal assistance, it must provide a child with disabilities a "free appropriate public education"[3] based on the unique needs of the student. 20 U.S.C. § 1412. The IDEA establishes minimum requirements for the education of children with disabilities. To implement those requirements, the Commonwealth, through the Department of Education, promulgated 11 Pa. Code § 14.1 et seq. Under the IDEA, as implemented by the state regulations, a school district must develop an IEP[4]

1. 20 U.S.C. 1400 et seq., formerly the Education of the Handicapped Act.

2. 22 Pa.Code Chapters 14 & 342.

3. A "free appropriate public education" is defined in 20 U.S.C. § 1401(18) as:

Special education and related services which (A) have been provided at public expense, under public supervision and direction, and without charge, (B) meet the standards of the State educational agency, (C) include an appropriate preschool, elementary, or secondary school education in the State involved, and (D) are provided in conformity with the individualized education program required under Section 1414(a)(5) of this title.

See also 22 Pa.Code § 14.1 ("appropriate program").

4. 20 U.S.C. § 1401(20) defines an IEP as:

A written statement for each child with a disability developed in any meeting by a representative of the local educational agency or an intermediate educational unit who shall be qualified to provide or supervise the provision of specially designed instruction to meet the unique needs of children with disabilities, the teacher, the parents or guardian of such child, and, whenever appropriate, such child, ...

State law, in 22 Pa.Code § 14.32(f), requires that an IEP include:

(1) a statement of the student's present levels of educational performance.

(2) a statement of annual goals and short-term learning outcomes which are responsive to the learning needs identified in the evaluation report.

(3) a statement of the specific special education services and programs and related services to be provided to the student, including ...

(v) Behavior management programs.

(vi) Transition services.

....

(5) Appropriate objective criteria, assessment procedures and timeliness for determining, on at least an annual basis, whether the goals and learning objectives are being achieved.

tailored in accordance with certain procedures for each child with a disability. 22 Pa.Code § 14.32. *See also* 20 U.S.C. § 1412.

Hope is a fifteen-year old student at the District's high school. In 1988, Hope was evaluated by a Multi–Disciplinary Team and was identified as Socially and Emotionally Disturbed (SED). Prior to the 1990–91 school year, the District sent Hope to the Rochester School District to attend an SED class. That SED class was discontinued in June of 1990 and Hope was then assigned to a Learning Disabled (LD) class in the District's Middle School for the 1990–91 school year.

In May 1991, Hope's mother, Delores Nesmith (Nesmith) met with the District's Coordinator of Special Education to address the difficulties Hope was having in school, including school suspensions. During the year, Hope had been suspended several times for disruptive behavior and cutting classes resulting in a loss of approximately thirty school days. Nesmith expressed concern about the appropriateness of Hope's placement but requested that Hope continue in the LD class. In June 1991, Nesmith met with the District's high school vice principal and one of Hope's teachers for the 1991–92 school year. At that time, Nesmith signed the IEP the District had prepared for Hope for the 1991–92 school year. The District subsequently revised that IEP, changing the classification listed from LD to SED and the participation in a LD class from 71% to 50% of Hope's time, without having a meeting with an IEP team or allowing Nesmith to have input in the revision of the IEP.

In July 1991, Nesmith requested a hearing pursuant to 22 Pa.Code § 14.64(a)[5] to address: (1) whether Hope's IEP was appropriate based on her SED needs; (2) whether the District violated procedural safeguards; for example, by not involving

. . . .

5. 22 Pa.Code § 14.64(a) provides:
   Parents may request an impartial due process hearing concerning the identification, evaluation or educational placement of a ... young child who is eligible or who is thought to be eligible, if the parents disagree with the school district's identification, evaluation or placement of the student or young child.

Nesmith in the procedures to develop the IEP; (3) the District's lack of an Individual Transition Plan for Hope; (4) whether the school suspensions imposed on Hope for disciplinary reasons during the 1990–91 school year amounted to a placement change.[6]

The hearing officer concluded that: (1) Hope's IEP was not appropriate because it does not address her emotional needs; (2) the District violated procedural safeguards because it has not completed a current multidisciplinary evaluation and teacher and parental involvement in the development of the IEP were lacking; and (3) the lack of an Individual Transition Plan did not violate Pennsylvania law because the regulations were not in effect at that time and did not violate the IDEA because transition is not required until Hope reached age sixteen. The hearing officer found that Hope had been suspended for more than 15 cumulative days without giving Nesmith notice and a right to a hearing which is a violation of 22 Pa.Code § 14.35. The hearing officer also denied Nesmith's request for attorney fees. Nesmith filed exceptions to the hearing officer's decision and the District answered the exceptions. The Secretary of the Department of Education appointed the Appeals Panel pursuant to 22 Pa.Code § 14.-64(n).[7]

Following the hearing officer's recommendations, the Appeals Panel found that the IEP was not appropriate because it was not individualized. That decision was based on the District's failure to consider Hope's present level of functioning, an individualized behavior modification plan, objective criteria or assessment procedures or timeliness to determine when goals were achieved. Moreover, the Appeals Panel found the annual goals stated in the IEP were written as general goals

6. Under 22 Pa.Code § 14.35, disciplinary suspensions for more than 15 cumulative days in a school year is considered a "change in educational placement" which means that a multidisciplinary evaluation, notice to parents and a right to a hearing is required.

7. 22 Pa.Code § 14.64(n) provides:
   The Secretary will contract for the services of impartial hearing officers and panels of appellate hearing officers and may compensate hearing officers for their services ...

for all the students in the class rather than developed individually for Hope, and related services and transition services were not provided. The Appeals Panel also held that the development of Hope's IEP violated procedural safeguards by not having a multidisciplinary evaluation, not including the parent or a current teacher on the IEP team, and failing to develop the IEP within the 20 days required.

To remedy the District's delay in providing a multidisciplinary evaluation and an appropriate IEP, and the District's imposition of school suspensions for more than 15 cumulative days without the proper procedures, the Appeals Panel ordered compensatory education for Hope. The Appeals Panel believed the remedy was needed because Hope was denied the appropriate public education to which she was entitled. However, the Appeals Panel denied attorney fees requested by Nesmith. The District then filed this appeal.[8]

The District's main contentions are: (1) certain findings of fact made by the Appeals Panel were not supported by substantial evidence and the Appeals Panel findings were based on speculation; (2) the Appeals Panel erred in concluding that the IEP was not appropriate for Hope; and (3) the Appeals Panel erred in ordering compensatory education.

## I. SUBSTANTIAL EVIDENCE

The District contends that the Appeals Panel's findings of fact that the IEP team did not include Nesmith or one of Hope's current teachers were not supported by substantial evidence. The IEP team meets to determine the educational placement of the student and to write the IEP pursuant to 22 Pa.Code § 14.32(b) and (c)[9] which requires that both a parent

8. Our review of a decision by a special appeals panel appointed by the Department of Education is limited to a determination of whether constitutional rights were violated, errors of law were committed, or the decision is supported by substantial evidence. 2 Pa.C.S. § 704. *Conrad Weiser Area School District v. Department of Education*, 145 Pa.Commonwealth Ct. 452, 603 A.2d 701 (1992).

9. 22 Pa.Code § 342.32 which supplements § 14.32 provides that:

and a current teacher be on the IEP team, along with several other people.

■ The District argues that Nesmith did participate in the development of the IEP because she met with the District's Coordinator of Education in May 1991 and she met with a teacher and the vice principal in June 1991. First, when Nesmith met with the Coordinator of Education in May, 1991, she did so on her own initiative. This is not a meeting of an IEP "team" as ensured and required by 22 Pa.Code §§ 14.32 and 342.32. Second, when Nesmith signed the IEP presented to her in June, 1991, by a teacher and a vice principal, she was not given an opportunity to provide any input into its development and it was presented as a finished product. 22 Pa.Code §§ 14.32 and 342.32 require Nesmith be allowed to give input to develop the IEP as part of an IEP team meeting. Moreover, Nesmith did not participate in the development of the revised IEP, although 22 Pa.Code § 14.35(a) requires that the IEP team, including the parent, meet whenever an IEP is revised.

■ The District argues that because Ms. Barley, the teacher who met with Nesmith in June, 1991, was one of Hope's teachers for the 1991–92 school year, that a current teacher was a member of the IEP team. However, at the time the IEP was written, Ms. Barley had never taught Hope nor had she ever met Hope. She didn't even know that she would become one of Hope's teachers in the fall. Though she later became one of Hope's teachers does not make her a "current" teacher at the time the IEP was written. Therefore, the objected to findings of fact were supported by substantial evidence.

> (b) The IEP shall be developed from data and information that are presented at the IEP meeting. The IEP may not be prepared prior to the IEP team meeting.
> . . . .

■  The District also contends that the Appeals Review Panel decision was based on speculation [10] and therefore cannot be upheld. The District pointed out two statements in the discussion section of the decision that it contends are speculation:

"It is possible that her lower score in the eighth grade may be due to the disintegration of her intellectual abilities because of emotional problems."

and:

"Failing grades in school from grades five through eight may not have occurred had Hope been properly classified, received the appropriate remedial instruction, behavior modification program and counseling."

While those statements are speculative, they are not the basis of the Appeals Panel decision. The Appeals Panel's decision was based on many findings of fact relating to violations of procedural safeguards and deficiencies on the face of the IEP that were supported by substantial evidence and reversal is not warranted.

## II.  APPROPRIATENESS OF IEP

■  The District argues that Hope's IEP was appropriate because it enables Hope to derive some educational benefit and because Nesmith had suggested that Hope remain in the LD classes. An assessment of an IEP must focus on both procedural safeguards and substantive goals. *Board of Education v. Rowley*, 458 U.S. 176, 206–07, 102 S.Ct. 3034, 3051, 73 L.Ed.2d 690 (1982). The procedural safeguards refer to how the IEP is developed and includes a multidisciplinary evaluation as the basis for the IEP, the required participants on the IEP team, the statements which the IEP must contain, and the time requirements, all of which are set forth in 22

10. "Suspicion may never be substituted for the standard of proof required by our laws." *Barnes v. Department of Justice*, 70 Pa.Commonwealth Ct. 47, 452 A.2d 593 (1982). In *Barnes*, we reversed an administrative agency decision imposing a suspension on a police officer because, although there was no evidence of what was said between the parties, the agency believed that the officer must have made a provocative remark or the other person would not have struck him and it based the suspension on that belief. *Barnes*, 70 Pa.Commonwealth Ct. at 50, 452 A.2d at 595.

Pa.Code § 14.32, and also the impartial due process hearing provided in 22 Pa.Code § 14.64. The substantive goals of the IEP refer to whether or not the IEP provides an individualized program that confers meaningful benefit. *Rowley.*

The Appeals Panel found that Hope's IEP was not appropriate based on both procedural violations and substantive flaws. Several procedural safeguards were violated by the District, most notably that the District did not complete a multidisciplinary evaluation, Nesmith was not a participant on the IEP team and neither was a current teacher, and the IEP did not include the factors required in 22 Pa.Code § 14.32(f),[11] such as objective criteria and assessment procedures. The IEP did not meet substantive requirements because, even if it conferred some educational benefit for Hope, as the District suggests, it was not individualized to meet her social and emotional needs. The Appeals Panel listed the factors the IEP lacked on its face such as Hope's present levels of functioning, individualized behavior modification plan, objective criteria, assessment procedures or timeliness to determine when goals were achieved, annual goals written for Hope rather than general ones written for all the students in the class, and related services to address Hope's social and emotional needs. The IEP was written in a general fashion for students attending LD classes and did not address Hope's individual disability.

Even if Hope was deriving some benefit from her placement and her mother requested that she remain in the LD class, her education and her IEP were not individualized. Hope was denied the free appropriate public education she was entitled to and the Appeals Panel made no error in concluding that the IEP was not appropriate.

### III. COMPENSATORY EDUCATION

█ The District also contends that in ordering compensatory education, the Appeals Panel exceeded its authority because 22 Pa.Code § 14.64 does not authorize compensatory education as a remedy. Compensatory education is a remedy

11. See footnote 4.

to compensate a student for a violation of statutory rights while he or she was entitled to those rights. *Lester H. v. Gilhool,* 916 F.2d 865 (3rd Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 1317, 113 L.Ed.2d 250 (1991). Compensatory education is an appropriate relief in the context of the IDEA because such an order "merely requires [the defendants] to belatedly pay expenses that [they] should have paid all along." *Miener v. State of Missouri,* 800 F.2d 749, 753 (8th Cir.1986) (citing *School Committee of Burlington v. Department of Education,* 471 U.S. 359, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985)). In *Lester H.,* because the school district failed to provide the student an appropriate educational placement for thirty months, the Third Circuit Court of Appeals affirmed the district court's award of thirty months of compensatory education for the student to be provided after he turned 21.

The Pennsylvania regulations implement the provisions of the IDEA, including 20 U.S.C. § 1415(e)(2) which the Third Circuit in *Lester H.* relied on for the award of compensatory education. Pennsylvania's implementation of the IDEA makes the Appeals Panel the ultimate fact finder and the regulations therefore empower it to grant appropriate remedies such as compensatory education. *See generally Pittsburgh Board of Education v. Commonwealth, Department of Education,* 135 Pa.Commonwealth Ct. 56, 581 A.2d 681, 684 (1990) (ordered compensatory physical therapy).

## IV. ATTORNEY'S FEES

■ The final issue raised was Nesmith's contention that she has a right to attorney's fees under the IDEA [12] and that this court should grant those attorney's fees. The Appeals Panel refused to grant attorney fees to Nesmith because it held that it was not empowered to do so under the IDEA. Obviously, the District did not raise the issue of attorney's fees in it's petition for review. The party who chooses to appeal chooses the issues and whatever is not chosen is

12. 20 U.S.C. § 1415(e)(4)(B) provides that "the court, in its discretion, may award reasonable attorney's fees as part of the costs to the parents or guardian of a child or youth with a disability who is the prevailing party."

waived. *Appeal of the Municipality of Penn Hills,* 519 Pa. 164, 546 A.2d 50, 54 (1988). Because the issue of attorney fees was waived, Nesmith could not raise the issue in this case. Furthermore, Nesmith was an aggrieved party because her request for attorney fees was denied by the Appeals Panel and she could have chosen to appeal that issue herself rather than raising it in response to the District's appeal. Pa.R.A.P. 501 and 511. Consequently, we will not address the issue.

Accordingly, we affirm the decision of the Appeals Panel.

## ORDER

AND NOW, this 1st day of September, 1992, the decision of the Special Education Appeals Review Panel of the Department of Education, Opinion No. 553, dated January 9, 1992, is affirmed.