# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

West Chester Area School District, : 
          Petitioner : 
  : 
     v. : No. 383 M.D. 2016
  : Submitted: February 10, 2017
A. M. and K. M., individually and : 
as parents and natural guardians : **SEALED CASE**
of C. M. and Charles Jelley, : 
Hearing Officer, Pennsylvania : 
Office of Dispute Resolution, : 
         Respondents : 


BEFORE:   HONORABLE ROBERT SIMPSON, Judge
      HONORABLE MICHAEL H. WOJCIK, Judge
      HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


**OPINION**
**BY JUDGE SIMPSON**        **FILED: June 19, 2017**


In this appeal/declaratory judgment action, the West Chester Area School District (District) appeals from a final order of Hearing Officer Charles Jelley (Hearing Officer) of the Pennsylvania Office of Dispute Resolution (ODR) denying the District's motion to enforce a waiver agreement and release (Waiver Agreement).

In our appellate jurisdiction, the District asserts Hearing Officer erred in determining he lacked the authority to enforce a settlement agreement at a due process hearing. In addition, the District filed a declaratory judgment action seeking a declaration that A.M. and K.M. (Parents), parents and natural guardians of C.M. (Student), waived their rights to file any further due process claims for the 2015-16 school year. Upon review, we affirm Hearing Officer's order, and we

remand the declaratory judgment action for failure to exhaust administrative remedies.

## I. Background

Student, a resident of the District, suffers from Asperger's Syndrome, a type of autism. As such, he is eligible for special education services under the Individuals with Disabilities Education Act (IDEA).[1] Based on our review of the limited record in this matter, it appears the present controversy began in early November of the 2015-16 school year. A dispute arose at a November 5, 2015 IEP (individualized educational plan) team meeting between Parents and the District as to what courses Student should be taking his junior year of high school. Principally, Parents requested that Student remain in an all honors curriculum. However, Student's teachers and Special Education Supervisor P.J. Dakes (Supervisor Dakes) believed the honors courses covered too much material, which overwhelmed Student, who began to struggle in some of his classes. As such, the IEP team recommended Student take academic level classes, which are also

---

[1] 20 U.S.C. §§1400-1482. Under the IDEA, as implemented by the Pennsylvania Department of Education's regulations, a school district must provide a child with a disability a free appropriate public education (FAPE) based on his unique needs. 20 U.S.C. §§1400(d)(1)(A), 1412(a)(1); 22 Pa. Code §14.102; Big Beaver Falls Area Sch. Dist. v. Jackson, 615 A.2d 910 (Pa. Cmwlth. 1992). To satisfy this obligation, a school district is required to develop an individualized educational plan (IEP) to address and meet a disabled child's educational needs that result from his disabilities. 20 U.S.C. §§1401(9), (14), 1414(d); 34 C.F.R. §§300.320-300.324; 22 Pa. Code §14.102; Jackson, 615 A.2d at 911-12. If a parent disagrees with his child's IEP, the parent may file a due process complaint and request an impartial due process hearing. 20 U.S.C. §1415(f); 22 Pa. Code §14.162(c). Prior to the due process hearing, the parties must participate in a resolution session, or waive or agree to end a resolution session. 20 U.S.C. §1415(f)(1)(B)(i); 22 Pa. Code §14.162(q). The parties may also agree to participate in a mediation process. 20 U.S.C. §1415(e), (f).

college preparatory, in order for him to graduate at the same time as his nondisabled peers. Parents, however, assert Student will be exposed to certain classmates in the lower level classes who bullied him since elementary school.

However, the merits of Parents' due process challenge under the IDEA are not the central issue in this case. On November 13, 2015, approximately a week after the November 2015 IEP meeting, Parents entered into the Waiver Agreement with the District. Essentially, the District would allow Student to remain in the honors classes, some of which he was failing, in exchange for Parents' agreement not to file any due process claims based on the decision to allow Student to remain in the honors classes. The Waiver Agreement states in pertinent part (with emphasis added):

> 1. <u>Parents acknowledge that the District has made an offer of a free and appropriate public education (FAPE) as described in the IEP with a revision date of November 5, 2015. Included in the IEP are proposed courses to be taken</u>.
>
> 2. Parents have requested that the IEP with a revision date of November 5, 2015 not be implemented and that the Student remain in the following courses: English 11 Honors, Algebra II Honors, American History Honors, Earth/Space Honors, German 3 Honors, Concert Band/Choir and Physical Education. Parents acknowledge that Student may fail any and all classes and may be required to repeat 11th grade if he does not pass a sufficient number of required classes.
>
> 3. In consideration of [Parents'] request, the District agrees to implement the specially designed instruction listed in the IEP with a revision date of November 5, 2015.

3

4. In consideration of [Parents'] request, the Student shall have a check-in period with a special education teacher 3 days per 5 day cycle.

5. The Parties agree that [Parents] may terminate this Waiver Agreement by providing written notice to the Supervisor of Special Education. Termination of the waiver shall result in the immediate full implementation of the IEP with a revision date of November 5, 2015, including adjusted class assignments. Upon receipt of a written request to terminate this Agreement, the District shall convene an IEP meeting. The Parents agree that in the event of a dispute for any reason, the pendent program and placement shall be the fully implemented IEP with a revision date of November 5, 2015.

6. [Parents] acknowledge and affirm that by agreeing to accept the consideration defined in this Agreement, they are waiving rights, whether known or unknown, that they and the Student may otherwise have to claims arising and relating to the future to fully implement the IEP with a revision date of November 5, 2015 under the [IDEA and its implementing regulations ….] Waivers as described herein shall be applicable from the execution of this Waiver Agreement through the start of the 2016-2017 school year or until such time as Parents make a written request to the Supervisor of Special Education to terminate this Waiver. Termination of the waiver shall have no impact on the validity or enforceability for any time period in which the waiver was in effect.

7. [Parents] warrant (a) that they have received written notification of their rights under state and federal law as the parents of a child with disabilities; (b) that they are fully aware of these rights and of the extent to which they are waiving them in this Agreement; (c) that they are fully aware that they are waiving rights on behalf of the Student; (d) that they have had the opportunity to consult with counsel if they so desired, concerning their rights and this Agreement; (e) that they are satisfied with the representation and advice that they have received from their counsel, if any, including that they have received an adequate explanation of the terms and obligations

4

described by this Agreement; (f) that they understand the nature and scope of this Agreement, and are signing this Agreement, including this waiver of important rights, knowingly and voluntarily.

District's Pet. for Review, Ex. B.

Despite the Waiver Agreement, Parents brought a special education due process complaint seeking relief, in part, for alleged claims which arose during the period of November 13, 2015 through the start of the 2016-2017 school year. Based on the Waiver Agreement, the District filed a motion to limit or dismiss Parents' due process complaint. See R.R. at 8a-11a.

On May 16 and June 3, 2016, Hearing Officer conducted telephonic hearings addressing the District's motion and the Waiver Agreement. At the hearings, Parents asserted the Waiver Agreement should not be enforced because they signed it under duress. However, Hearing Officer did not find that Parents' concerns constituted adequate proof of duress. Notes of Testimony (N.T.), 6/3/16, at 55-56; R.R. at 67a. Nonetheless, Hearing Officer determined that the enforceability of the Waiver Agreement is an issue for the courts, not the ODR. N.T. at 56; R.R. at 67a. To that end, Hearing Officer stated:

> While I understand and appreciate [Parents'] concerns, those concerns do not rise to the level of actually establishing duress [in] executing or completing the document. That said, the document speaks for itself.
>
> Now back to the dilemma that I originally had when I first contacted the District. And said, well, there is a case out there that says I can't do anything with this. There can be arguments on it, but it's for a judge to decide. And I'm somewhat crippled in my position to be

5

able to take and act on the agreement. But as far as duress in terms of not having the agreement, I do not find there is adequate proof as to duress at this time. Maybe able to appeal that ruling when this is concluded.

Id. (emphasis added).

On June 22, 2016, Hearing Officer entered what he labeled a "final order" denying the District's motion to enforce the Waiver Agreement, but granting the District's oral motion to file an action in the courts to enforce the Waiver Agreement. R.R. at 75a. The order specified that the District must file its court action within 45 days. Id. In addition, Hearing Officer scheduled a July 22, 2016 hearing on Parents' consolidated claims, including their claim for a denial of FAPE relief for the 2016-17 school year. Id.

On July 1, 2016, the District filed a petition for review in this Court appealing Hearing Officer's "final order." In addition, the District's petition includes a one-count complaint seeking declaratory judgment. Specifically, the District requests an order: (a) enjoining Hearing Officer from considering any claim for the period of November 13, 2015 through the start of the 2016-2017 school year; (b) declaring Parents waived their right to seek any claims or remedies for the period of November 13, 2015 through the start of the 2016-2017 school year; and, (c) declaring that Hearing Officer, at the scheduled July 2016 hearing, is not to consider any claim or remedy brought by Parents for the period of November 13, 2015 through the start of the 2016-2017 school year.

6

On July 11, 2016, the District filed an application for special relief in the nature of a preliminary injunction. The District sought to enjoin Hearing Officer from considering any claim for the period of November 13, 2015 through the start of the 2016-2017 school year until resolution of this case.

On July 14, 2016, this Court entered an order temporarily enjoining the scheduled ODR hearing on Parents' claims and scheduling a hearing on the District's application for a preliminary injunction. Following a hearing on the application two weeks later, Senior Judge Bonnie B. Leadbetter filed a memorandum opinion and order staying the ODR proceedings pending the disposition of the District's petition for review. Senior Judge Leadbetter also directed that in the absence of any dispositive motions this matter be scheduled for trial at the close of the pleadings "and upon praecipe of either party." See West Chester Area School District v. A.M. and K.M., individually as parents and natural guardians of C.M. and Charles Jelley, Hearing Officer, Pennsylvania Office of Dispute Resolution (Pa. Cmwlth., No. 383 M.D. 2016, filed July 28, 2016), Slip Op. at 2.

Thereafter, Parents, representing themselves, filed an answer and new matter to the District's petition for review. Parents denied the material allegations of the District's petition. In particular, Parents averred the District used undue influence in insisting they sign the Waiver Agreement. Therefore, Parents sought a declaration that the Waiver Agreement was unenforceable, and that Hearing Officer may consider their claims and requested remedies for the period of November 13, 2015 through the start of the 2016-2017 school year.

7

Hearing Officer also filed an answer to the District's petition. Hearing Officer averred that he should not be party to the appeal because ODR assigned him to conduct a due process hearing, make rulings and issue decisions in a quasi-judicial capacity in a special education dispute between Parents and the District. Although Hearing Officer noted his determination at the hearing that he lacked the legal authority to enforce the Waiver Agreement, he indicated he is obligated to implement this Court's decision regarding the enforceability or non-enforceability of the Waiver Agreement.

Despite the Court's order regarding the scheduling of a trial, neither party filed a praecipe to schedule a trial on the District's original jurisdiction declaratory judgment action. On November 21, 2016, Senior Judge Leadbetter filed a memorandum opinion and order recognizing that the District filed a brief addressing the appellate aspect of the case. Judge Leadbetter noted that our appellate review is conducted on the record made before the government unit. West Chester Area School District v. A.M. and K.M., individually as parents and natural guardians of C.M. and Charles Jelley, Hearing Officer, Pennsylvania Office of Dispute Resolution (Pa. Cmwlth., No. 383 M.D. 2016, filed November 21, 2016), Slip Op. at 2. Ultimately, in early 2017 the Court directed that the District's petition for review be submitted on briefs without oral argument.

## II. Issues

The District contends Parents entered into a legally binding contract waiving their right to seek any claims or remedies for the period of November 13, 2015 through August 30, 2016, the start of the 2016-2017 school year. To that

8

end, the District asserts Hearing Officer found that Parents were not subject to duress in entering into the Waiver Agreement. The District also challenges Hearing Officer's determination that he lacked the legal authority to enforce the Waiver Agreement.

## III. Discussion
### A. Duress in Execution of Waiver Agreement
### 1. Argument

The District first contends the parties legally entered into the Waiver Agreement, which must be considered a binding contract. Parents acknowledge they were represented by counsel during the period up to and after the November 2015 IEP meeting and Waiver Agreement. However, after receiving the benefit of the bargain for five months, Parents raised the issue of duress to avoid acceptance of the Waiver Agreement in an attempt to raise due process claims for the period covered by the Agreement.

Here, the District asserts, it forwarded the Waiver Agreement to Parents on November 6, 2015, and Parents executed it and returned it a week later on November 13, 2015. The District further asserts Parents were represented by an attorney during the time period leading up to their signing of the Waiver Agreement.

Nonetheless, Parents filed a series of amended complaints alleging the District denied Student a FAPE. As noted, Hearing Officer held a May 2016 hearing on the District's motion to limit or dismiss Parents' claims based on the

9

Waiver Agreement. See N.T., 5/16/16, at 1-49; R.R. at 47a-59a. At this hearing, Parents argued the District coerced them into signing the Waiver Agreement. At the close of the hearing, Hearing Officer scheduled a second hearing on the Waiver Agreement for June 3, 2016.

At the June 3 hearing, Hearing Officer made the determination that Parents' evidence did not establish duress on the part of the District. N.T., 6/3/16 at 55-56; R.R. at 67a. Under Pennsylvania law, where a contracting party is free to come and go and consult with counsel, there can be no duress without threats of bodily harm. Three Rivers Motor Co. v. Ford Motor Co., 522 F.2d 885 (3d Cir. 1975) (citing Carrier v. William Penn Broad. Co., 233 A.2d 519 (Pa. 1967)).

Citing Hearing Officer's rationale, the District requests that this Court uphold Hearing officer's determination that Parents were not subject to distress while executing the Waiver Agreement.

In response, Parents contend the District harassed and coerced them into signing the Waiver Agreement by threatening to change Student's honor level classes to lower level courses where he would be bullied based on his disability unless they agreed to sign the waiver. In particular, Parents assert Supervisor Dakes threatened to significantly revise Student's schedule the following Monday if they did not sign the Waiver Agreement by November 13, 2015. As such, Parents argue the record supports a claim of harassment, coercion and duress against the District in threatening to remove Student from a school environment to which he adjusted if they did not sign the Waiver Agreement.

10

## 2. Analysis

To begin our analysis, we note that our appellate standard of review is limited to whether the agency's necessary findings were supported by substantial evidence, whether the agency erred as a matter of law or violated a party's constitutional rights. E.N. v. M. Sch. Dist., 928 A.2d 453 (Pa. Cmwlth. 2007). Substantial evidence is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Id.

In the present case, Hearing Officer reasoned that duress is not established in Pennsylvania by merely showing a promise under pressure. Hearing Officer observed that where the contracting party is free to come and go and consult with an attorney, there can be no duress absent a threat of physical force or harm. N.T., 6/3/16 at 55; R.R. at 65a. We agree. Duress is defined as that degree of restraint or danger, either actually inflicted or impending, which is sufficient in severity or apprehension to overcome the mind of an individual of ordinary firmness. Bata v. Central-Penn Nat'l Bank of Phila., 224 A.2d 174 (Pa. 1966); Hamilton v. Hamilton, 591 A.2d 720 (Pa. Super. 1991).

Student's mother (Mother) testified at the May 2016 hearing that the District coerced her and her husband, Student's father, to sign the Waiver Agreement because the District threatened them with emails indicating that if they did not sign the Agreement by November 15, 2016, Student would be placed in different classes the next Monday. See N.T., 5/16/16 at 14-15; R.R. at 51a. In short, Mother testified that she and her husband signed the Waiver Agreement to

11

prevent Student's current schedule, which involved mostly honors classes, from being disrupted. N.T., 5/16/16 at 15; R.R. at 51a.

Based on our review of the record before the ODR, we discern no error in Hearing Officer's determination that Parents did not present sufficient evidence of duress. Rather, the District agreed to consent to Parents' demands that Student remain in honors courses based on Parents' agreement to waive any claims against the District based on the results of their request. Given these circumstances, we reject Parents' argument that they signed the Waiver Agreement under duress. As Mother testified, she and her husband "thought it was best" to continue with Student's current roster, "and that's why we signed it." N.T., 5/16/16 at 20; R.R. at 52a.

In addition, the parties do not dispute that Parents were represented by counsel at the time they signed the Waiver Agreement. Although Parents may have signed the Waiver Agreement reluctantly, Hearing Officer properly determined Parents failed to establish they did so under duress. Carrier; Bata; Hamilton.

### B. Authority to Enforce Waiver Agreement
### 1. Argument

The District's primary contention in this matter is that Hearing Officer should have the authority under Pennsylvania law to enforce settlement agreements at special education due process hearings. The District asserts Pennsylvania case law continues to sidestep this crucial issue.

The District's argument is as follows. Hearing officers are vested with statutory authority under the IDEA and its regulations to determine if a school district failed to provide a student with a FAPE. 20 U.S.C. §1415(f)(3)(E)(i). A FAPE involves the identification, evaluation, and placement of a handicapped student. See 20 U.S.C. §1415(b)(3); 300 C.F.R. §300.503(a)(1),(2).

A line of fairly recent Pennsylvania federal court cases involving the issue of whether a hearing officer has the authority to enforce a settlement agreement began with Lyons v. Lower Merion School District, No. CIV-A 09-5576 (E.D. Pa., filed December 14, 2010), 2010 WL 8913276. In Lyons, an unreported case, the Eastern District, speaking through Judge Legrome D. Davis, stated:

> Whether a [h]earing [o]fficer has jurisdiction to enforce resolution agreements appears to be an open question in this circuit. The argument against jurisdiction finds support in two regulatory provisions: 34 C.F.R. §300.506(b)(7) and §300.510(d)(2). The first provides that '[a] written, signed mediation agreement under this paragraph is enforceable in any State court of competent jurisdiction or in a district court of the United States' [;] the second notes the same for resolution agreements. Thus, the argument goes, a hearing officer does not have jurisdiction to enforce resolution and mediation agreements because they may be enforced in state and federal courts, and thus must be. Notably, neither of these provisions precludes a hearing officer from reviewing a settlement agreement's terms; at most, they prevent the hearing officer from enforcing the agreement.

Lyons, slip op. at ___, 2010 WL 8913276 at *3 (emphasis added). Notably, the Lyons Court did not actually decide the issue of whether a hearing officer has the

13

authority to enforce settlement agreements. Rather, the Court determined that the resolution agreement in that case did not bar the plaintiff's complaint.

In a later unreported federal case, I.K. *ex rel.* B.K. v. School District of Haverford Township, No. CIV-A 10-4397 (E.D. Pa., filed March 21, 2011), 2011 WL 1042311, the Eastern District, speaking through Judge Stewart Dalzell, noted the *dicta* in Lyons and recognized that the issue of whether a hearing officer has jurisdiction to enforce resolution agreements under the IDEA is still an open issue in the Third Circuit. However, Judge Dalzell similarly decided in I.K. not to address this issue. Nonetheless, Judge Dalzell, citing federal decisions from other states, reasoned that it is within the jurisdiction of a hearing officer to determine whether a settlement agreement exists. See I.K., slip op. at ___, 2011 WL 1042311 at *5.

Thereafter, in J.K. v. Council Rock School District, 833 F.Supp.2d 436 (E.D. Pa. 2011), Judge Dalzell finally held that a hearing officer lacks jurisdiction under the IDEA to enforce a settlement agreement. In particular, Judge Dalzell stated (with emphasis by underline added):

> For many of the reasons Lyons and [H.C. v. Colton-Pierrepont Central School District, 341 F. Appx. 687, 689 (2d Cir. 2009)] enunciate, we agree that a hearing officer lacks jurisdiction to enforce a settlement agreement. In the first place, Congress in the statute created a particular procedure for enforcing settlement agreements arising out of mediation and resolution processes under the IDEA by making such agreements 'enforceable in any State court of competent jurisdiction or in a district court of the United States.' 20 U.S.C. §§ 1415(e)(2)(F)(iii), 1415(f)(1)(B)(iii)(II). As Judge Davis has noted, it is a 'well-settled principle that "if there

14

exists a special statutory review procedure, it is ordinarily supposed that Congress intended that procedure to be the exclusive means of obtaining judicial review in those cases to which it applies.'" Lyons, slip op. at 6–7 (quoting Comp. Dep't of Dist. Five v. Marshall, 667 F.2d 336, 340 (3d Cir.1981)). Secondly, regulations implementing the IDEA permit enforcement of settlement agreements 'in any State court of competent jurisdiction or in a district court of the United States, or, by the SEA [state educational agency], if the State has other mechanisms or procedures that permit parties to seek enforcement of resolution agreements.' 34 C.F.R. § 300.510(d)(2); see also § 300.537 ('Notwithstanding §§ 300.506(b)(7) and 300.510(d)(2), which provide for judicial enforcement of a written agreement reached as a result of mediation or a resolution meeting, there is nothing in this part that would prevent the SEA from using other mechanisms to seek enforcement of that agreement.'). This authorization suggests by its terms that in the absence of 'other mechanisms or procedures' implemented by a state, the exclusive means for enforcing a settlement agreement under the IDEA is 'in any State court of competent jurisdiction or in a district court of the United States.' Neither party has suggested that Pennsylvania has adopted or implemented any such 'other mechanisms or procedures.'

Third, Congress has specifically identified the task that hearing officers should undertake under the IDEA, explaining that '[s]ubject to clause (ii) [relating to procedural violations of the IDEA], a decision made by a hearing officer shall be made on substantive grounds based on a determination of whether the child received a free appropriate public education.' 20 U.S.C. § 1415(f)(3)(E)(i). Enforcement of a settlement agreement may determine if parents have waived certain rights under the IDEA, or whether an LEA [local education agency] has contracted to provide certain benefits above those that the IDEA requires, but it is not related to the fundamental question of whether a 'child received a free appropriate public education.' Enforcing a settlement agreement thus appears to exceed the authority that the IDEA confers upon a hearing officer.

15

Finally, as the Second Circuit noted in [H.C.] (internal quotation marks, citations, and brackets omitted), 'resolution of the dispute [relating to enforcement of a settlement agreement] will not benefit from the discretion and educational expertise of state and local agencies, or the full exploration of technical educational issues related to the administration of the IDEA.' The Supreme Court has noted that 'courts lack the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy,' [Board of Education of the Henrick Hudson Central School District, Westchester County v. Rowley, 458 U.S. 176, 208 (internal quotation marks and citations omitted), so accordingly we should defer to state proceedings regarding these questions. The converse would appear to be true with respect to questions of contract interpretation and enforcement, as to which courts have 'specialized knowledge and experience' and hearing officers do not institutionally have any particular expertise.

Judge Davis correctly observed that 'state educational agencies seem to consistently enforce settlement agreements in school districts' favors to preclude parents from bringing particular due process complaints, without undertaking analyses of their own jurisdiction.' Lyons, slip op. at 7. The fact that these agencies enforce settlement agreements does not mean that the IDEA authorizes them to do so. The IDEA's language and the purposes justifying due process hearings suggest that hearing officers lack jurisdiction to enforce settlement agreements—even those produced through mediation and resolution meetings—though, to be sure, they may acknowledge the existence of such agreements and consider them in determining whether a child has received a free and appropriate public education.

We therefore conclude that Hearing Officer Culleton did not err in declining to enforce the parties' settlement agreement.

J.K., 833 F.Supp.2d at 448-49 (footnotes omitted).

16

Nonetheless, the District asserts Judge Dalzell's decision in J.K. is nonbinding on this Court, which has not previously rendered a decision under Pennsylvania law regarding a hearing officer's authority over enforcement of a settlement agreement. In A.S. and R.S. v. Office for Dispute Resolution (Quakertown Community School District), 88 A.3d 256, 263 (Pa. Cmwlth. 2014), this Court noted that there is no provision in the IDEA, or the Pennsylvania regulations implementing the IDEA, which directly addresses a hearing officer's authority to determine whether a valid settlement agreement exists between the parties. However, consistent with Judge Dalzell's unreported district court decision in I.K., this Court determined that hearing officers have the authority under the IDEA to determine whether a valid settlement agreement exists, thereby establishing appellate subject matter jurisdiction over that issue. In A.S. this Court was not asked to enforce a settlement agreement. A.S., 88 A.3d at 263 n.9.

Similar to the situation in A.S., the District asserts there is no explicit statutory prohibition on hearing officers' authority to enforce settlement agreements. Therefore, given the observations and conclusions in A.S. that hearing officers have expertise in understanding educational terms within a settlement agreement, and that they are able to determine whether a valid settlement agreement exists, it is logical for the Court to determine hearing officers have the authority to not only interpret, but enforce, settlement agreements made through the dispute resolution mechanisms of the IDEA. Consequently, the District urges this Court to hold that Hearing Officer has the authority to enforce the Waiver Agreement in the present case. A.S.

17

## 2. Analysis

Initially, we recognize that we are not bound to follow the decisions of federal district and intermediate appellate courts on issues of federal law. Minor v. Kraynak, 155 A.3d 114 (Pa. Cmwlth. 2017); Brown v. Pa. Dep't of Corr., 932 A.2d 316 (Pa. Cmwlth. 2007) (citing Hall v. Pa. Bd. of Prob. & Parole, 851 A.2d 859 (Pa. 2004)). However, although decisions of the federal courts lower than the U.S. Supreme Court are not binding on Pennsylvania courts, they may be considered as persuasive authority with regard to federal questions. Chiropractic Nutritional Assocs., Inc. v. Empire Blue Cross & Blue Shield, 669 A.2d 975 (Pa. Super. 1995). Thus, when possible, it is appropriate for a Pennsylvania appellate court to follow the Third Circuit's ruling on federal questions to which the U.S. Supreme Court has not yet provided a definitive answer. Id.

In J.K., Judge Dalzell squarely addressed the issue of whether a hearing officer has jurisdiction to enforce settlement agreements made under the IDEA. In concluding a hearing officer lacks jurisdiction to enforce a settlement agreement, Judge Dalzell noted that Congress created a specific procedure for enforcing settlement agreements arising out of mediation and resolution processes under the IDEA by making such written agreements enforceable in "any State court of competent jurisdiction or in a district court of the United States." 20 U.S.C. §1415(e)(2)(F)(iii); 20 U.S.C. §1415(f)(1)(B)(iii) (emphasis by underline added). Where a special statutory review procedure exists, "it is ordinarily supposed that Congress intended that procedure to be the exclusive means of obtaining judicial review in those cases to which it applies." J.K., 833 F.Supp.2d at 448 (citation omitted).

Judge Dalzell further observed in J.K. that regulations implementing the IDEA permit enforcement of settlement agreements by a state enforcement agency if the state has other mechanisms or procedures that permit parties to seek enforcement of resolution agreements. See 34 C.F.R. §300.510(d)(2) and §300.537. However, the Court noted Pennsylvania has not implemented such "other mechanisms or procedures" for enforcing settlement agreements. J.K., 833 F.Supp.2d at 448.

As an additional reason for holding a hearing officer lacks jurisdiction to enforce a settlement agreement, Judge Dalzell noted that the IDEA tasks a hearing officer with making substantive determinations related to whether a child received a FAPE. See 20 U.S.C. §14215(f)(3)(i). However, the Judge reasoned, the enforcement of settlement agreements, an area of law unrelated to the fundamental question of whether a child received a FAPE, exceeds the authority the IDEA confers on a hearing officer. To that end, Judge Dalzell further noted that while hearing officers, who are not required to be attorneys, have the specialized knowledge to resolve difficult questions of educational policy, they may not have any particular expertise in matters of contract interpretation and enforcement.

Further, in our decision in A.S., wherein we held that a hearing officer had the authority under the IDEA to determine whether a valid settlement agreement existed, we noted: "If a resolution is reached to resolve a due process complaint prior to the hearing, the parties are statutorily required to execute a legally binding settlement agreement that is enforceable in any State court of

19

competent jurisdiction or in a United States District Court. 20 U.S.C. §1415(f)(1)(B)(iii)." A.S., 88 A.3d at 264 (emphasis added).

We sympathize with the District's public policy argument that it may be unfair or cost prohibitive to require either families or financially distressed school districts to go to court to enforce a contractual agreement that could be enforced by hearing officers in an expedited fashion. Nonetheless, we must acknowledge that the IDEA specifically provides for the enforcement of settlement agreements in "any State court of competent jurisdiction or in a district court of the United States." 20 U.S.C. §1415(e)(2)(F)(iii); 20 U.S.C. §1415(f)(1)(B)(iii) (emphasis added).

However, we also recognize that the IDEA's regulations governing state enforcement mechanisms provide:

> there is nothing in this part that would prevent the [state educational agency] from using other mechanisms to seek enforcement of a [written settlement agreement], provided that use of those mechanisms is not mandatory and does not delay or deny a party the right to seek enforcement of the written agreement in a State court of competent jurisdiction or in a district court of the United States.

34 C.F.R. §300.537. Unfortunately, as Judge Dalzell noted in J.K., no such other mechanisms exist in Pennsylvania. Nevertheless, in accord with this regulation, it appears that the Pennsylvania Board of Education may provide such mechanisms for parties who do not wish to have their agreement enforced by state or federal courts. Regardless, absent such alternative mechanisms, neither the IDEA nor its

20

regulations authorize a hearing officer to enforce settlement agreements. J.K. Therefore, we will not attempt to judicially alter the terms of the IDEA or its regulations by extending the authority of the hearing officer beyond that specifically granted by Congress.

## IV. Further Proceedings

For the above reasons, Hearing Officer's order denying the District's motion to enforce the Waiver Agreement is affirmed.

Going forward, we consider how to resolve the outstanding request for injunctive and declaratory relief. Technically speaking, the outstanding request is not in this Court's original jurisdiction; rather, enforcement actions dealing with matters from Commonwealth agencies, like the ODR, are considered to be ancillary to our appellate jurisdiction. Uniontown Newspapers, Inc. v. Pennsylvania Dep't of Corr., 151 A.3d 1196, 1202-03 (Pa. Cmwlth. 2016); see Dep't of Envtl. Prot. v. Cromwell Twp., Huntingdon Cnty., 32 A.3d 639 (Pa. 2011) ("enforcement proceedings lie in … appellate jurisdiction; they are not appealable as of right under 42 Pa. C.S. §723(a)"); Pa. Human Relations Comm'n v. Scranton Sch. Dist., 507 A.2d 369 (Pa. 1986). This distinction is important in determining the availability of further appeals as of right.

As discussed in A.S., a hearing officer under the IDEA has authority to determine whether a valid settlement agreement exists between the parties. A.S., 88 A.3d at 263-64. We view the Hearing Officer's decision here as determining that a valid settlement agreement exists. This is because the Hearing

21

Officer rejected the Parents' only argument regarding invalidity of the Waiver Agreement.

As also discussed in A.S., the parties must first exhaust administrative remedies before seeking judicial relief. This requirement allows the educational agency, which presumably has considerably greater expertise in the field of education than does the court, to attempt to resolve the complaint in the first instance. Id. at 264. Also, it allows the family to play a role in designing appropriate accommodations. Id. Further, and of particular significance here, it prevents the unnecessary duplication of judicial review by allowing the administrative agency to develop the factual record prior to review by a court. Id. Thereafter, a party who is aggrieved by a hearing officer's decision may appeal to a court of competent jurisdiction. Id at 265. "To decide otherwise would result in piecemeal litigation resulting in an undue delay in providing an eligible student with a free appropriate public education as mandated by the IDEA." Id. at 265 n.13.

Unfortunately, this case illustrates the problems of piecemeal litigation and unnecessary delay in resolving questions about a FAPE for Student for the 2015-2016 school year. The District's appeal/declaratory judgment action essentially bifurcated the existing disputes. Parents' concerns about that school year have not been resolved, and this Court does not have a factual record about those issues to review. Accordingly, we decline to exercise ancillary jurisdiction at this time. Instead, we dissolve injunctions and stays, and we remand the matter to the ODR for appointment of a hearing officer to address Parents' complaints about

22

the 2015-2016 school year, to create a record, and to decide how, if at all, the Waiver Agreement impacts the Parents' complaints. Id. at 263 n.9 (quoting J.K., 833 F.Supp.2d at 449) ("[H]earing officers 'may acknowledge the existence of [settlement] agreements and consider them in determining whether a child has received a free and appropriate public education.'") Thus, a hearing officer could decide that in light of all the circumstances, including the Waiver Agreement, the education provided to Student during the 2015-2016 school year met the requirements of the IDEA. Conversely, a hearing officer could decide that despite the Waiver Agreement, other arrangements for Student were required by the law. Once a hearing officer has resolved all outstanding issues, an aggrieved party may appeal to this Court. As part of an appeal, a party may seek enforcement from this Court.

_____

ROBERT SIMPSON, Judge

23

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| West Chester Area School District, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 383 M.D. 2016 |
| | : | |
| A. M. and K. M., individually and | : | |
| as parents and natural guardians | : | **SEALED CASE** |
| of C. M. and Charles Jelley, | : | |
| Hearing Officer, Pennsylvania | : | |
| Office of Dispute Resolution, | : | |
| Respondents | : | |

# O R D E R

**AND NOW**, this 19th day of June, 2017, for the reasons stated in the foregoing opinion, the June 22, 2016 order of Pennsylvania Office of Dispute Resolution Hearing Officer Charles Jelley, denying Petitioner West Chester Area School District's Motion to Enforce the Waiver Agreement, is **AFFIRMED** and the matter is **REMANDED** to the Pennsylvania Office of Dispute Resolution for further proceedings consistent with the foregoing opinion. Further, Petitioner's declaratory judgment action is **DISMISSED without prejudice**; all injunctions and stays are **DISSOLVED**.

Jurisdiction is relinquished.

_____
ROBERT SIMPSON, Judge