Miguel ROBLES, Appellant,

v.

PENNSYLVANIA DEPARTMENT OF CORRECTIONS, Martin Horn, Joseph F. Mazurkiewicz, Robert J. Large, Sam Mazzotta, Robert S. Bitner.

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 2, 1998.
Decided Sept. 22, 1998.

Miguel Robles, appellant, for himself.

Raymond W. Dorian, Camp Hill, for appellees.

Before McGINLEY and PELLEGRINI, JJ., and LORD, Senior Judge.

LORD, Senior Judge.

Miguel Robles appeals a Centre County common pleas court order dismissing his complaint. We affirm.

According to his complaint, Robles became subject to the authority of the appellee Department of Corrections (Department) on June 8, 1994, when he was initially received at the State Correctional Institute, Camp Hill. In August 1994, he was transferred to State Correctional Institute, Rockview. Robles listed on his visitor permission form one Creighton D. Glusco as his business associate and spiritual advisor, and, apparently, Glusco visited Robles both at Camp Hill and Rockview. Sometime after and without a hearing, Rockview officials advised Robles in writing that Glusco would no longer be allowed to visit him without permission of the superintendent, because Glusco was a former in-

mate. The Department Policy Statement on inmate visiting privileges announces that it is the Department's policy to prohibit former inmates of any correctional system to visit without special permission of the institute superintendent.

Robles asserted that he then followed Department procedures by submitting a formal application to the superintendent at Rockview for permission to have Glusco placed on his visiting list, and that his application was denied. This denial caused Robles to lose personal investment opportunities and to miss timely payment of his financial obligations, as well as to be deprived of other benefits of personal visits by his business and spiritual advisor. Robles sought declaratory and injunctive relief and monetary relief for the deprivation of his constitutional rights, for the infliction of emotional distress and mental anguish, and for the financial loss he suffered as a result of the denial of access to Glusco.

The Centre County common pleas court dismissed Robles' complaint, concluding that it did not have original jurisdiction over the matter, but that Commonwealth Court did. Robles then filed his complaint in this Court. By order of July 10, 1997, finding that we did not have original jurisdiction, this Court transferred the matter back to the Court of Common Pleas of Centre County. On October 7, 1997, the common pleas court once again dismissed Robles' complaint and his appeal to this Court ensued.

On appeal, Robles contends that the common pleas court wrongfully dismissed his complaint without a hearing. Robles argues that, because his complaint stated several violations of his constitutional rights and Commonwealth regulations, as well as seeking monetary damages for common law trespasses and for constitutional violations under 42 U.S.C. § 1983, a hearing is required.

■ We, however, are not persuaded that the court erred in dismissing Robles' complaint without a hearing. As to Robles' claim under 42 U.S.C. § 1983 that Rockview officials effected a violation of his civil rights, to

maintain such an action, a plaintiff is required to allege that a person or persons deprived him of those rights while acting under color of state law. *Clark v. Southeastern Pennsylvania Transportation Authority*, 691 A.2d 988 (Pa.Cmwlth.1997). "A section 1983 action does not create any substantive rights, but merely serves as a 'vehicle or device' by which a citizen is able to challenge conduct by a state official whom he claims has deprived him of his civil rights." *Id.* at 991 (quoting H. Blackmun, Section 1983 and Federal Protection of Civil Rights, 60 N.Y.U. L.Rev. 1, 1 (1985)). Robles asserts that the right protected here is the right to due process of law when a state deprives any person of life, liberty or property.

■ Robles acknowledges the holding of the United States Supreme Court in *Kentucky Department of Corrections v. Thompson*, 490 U.S. 454, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989). "[T]he denial of prison access to a particular visitor is well within the terms of confinement ordinarily contemplated by a prison sentence ... and therefore is not independently protected by the Due Process Clause."[1] He correctly points out that, in the prison setting, state law may nonetheless create enforceable liberty interests, subjecting those interests to due process protections, depending on the state's pertinent statutes and regulations. *Id.* The most common manner by which a state creates such a liberty interest is by establishing "substantive predicates" to govern official decision making and by mandating the outcome of those decisions on finding that the relevant criteria have been met. *Id.*, 490 U.S. at 462, 109 S.Ct. 1904 (citations omitted).

An examination of the Department's policy here reveals that it, like the Kentucky prison regulation in *Thompson*,[2] does not meet the test for statutory or regulatory creation of a liberty interest protected by the Due Process Clause. It lacks the "requisite mandatory language" and "stops short of requiring that a particular result is to be reached" once substantive criteria are met. *Id.* 490 U.S. at 464, 109 S.Ct. 1904. Contrary to Robles'

---

1. U.S. CONST. Amend. XIV.

2. Kentucky's "Reformatory Procedures Memorandum."

argument that the superintendent lacked discretionary authority to bar an ex-inmate once an application for special permission was satisfactorily completed, there is nothing about the language of the Department's Policy Statement that is mandatory.[3] Nothing in the policy statement creates a reasonable expectation that a particular prohibited visitor must necessarily be allowed access once a request to the superintendent is made. The language throughout the statement, and the procedure established by it, do not suggest that the decision of the superintendent is invested with only a ministerial duty, or that a certain outcome is mandated once substantive criteria have been satisfied. We therefore find no state created liberty interest that mandated a hearing on Robles' request for a special permission visit before it was acted on, if that is the process Robles believes is due him. *See also, Al Samad v. Bureau of Corrections*, 93 Pa.Cmwlth. 146, 500 A.2d 1242 (1985). Consequently, Robles failed to state a cause of action under 42 U.S.C. § 1983, or for declaratory and injunctive relief on state constitutional grounds, and dismissal of his complaint on these counts was not unwarranted.

■ As to the state tort claims Robles asserts, review of his complaint reveals that it alleges no negligent conduct whatsoever or lack of due care on the part of Department officials. Robles' complaint alleges only intentional action to limit his visiting and mail privileges. Commonwealth parties and officials thereof acting in their official capacity enjoy sovereign immunity except as it has been waived by the General Assembly. Section 8521 of the Judicial Code, 42 Pa.C.S. § 8521. Liability against the . Department arises only when, damages are caused by *negligent* actions. *Clark.* Therefore, even on the facts stated therein, it was proper to dismiss Robles' complaint without a hearing for failure to state a cognizable cause of action in the nature of trespass.

### ORDER

AND NOW, this 22nd day of September, 1998, it is hereby ORDERED that the order of the Centre County Common Pleas Court at No. 97–2419, dated October 7, 1997, is hereby affirmed.

**3. D. Prohibited Visitors**

The following categories of individuals will generally be prohibited from visiting inmates:
- Former inmates of any correctional system.
- Any person who is currently under parole or probation supervision.
- Any current inmate in pre-release status.
- Any Department of Corrections employee.
- Any former Department of Corrections employee.
- Any currently active Volunteer for the Department of Corrections.
- Any current or former contract employee.
- Any minor victim of the inmate.

The Department of Corrections recognizes that legitimate reasons may exist for an inmate to receive visits from those categories of persons listed above. These persons may visit only with the special permission of the Superintendent(s). Former employees are trusted to exercise good judgement in their visitation of inmates but must also follow protocol in notifying the Superintendent(s).

The following procedures shall be utilized to request approval for such a visit.
1. The inmate requesting such a visit must submit a request slip to his/her counselor identifying the visitor by name, relationship, and status (current inmate, former inmate, parolee, employee).
2. The counselor shall make a recommendation to the Superintendent regarding the advisability of this visit.
. . .
4. Ex–Offenders on parole or probation must have prior written permission from their Parole or Probation Officer to visit a State Correctional Facility.
5. Ex–Offenders whose parole or probation has expired must have proof of the expiration of their parole or probation. Ex–Offenders currently on probation or parole will not be considered for visiting unless they have completed at least one year of successful parole or probation supervision. The Superintendent or designee may make an exception to the one year rule.