IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Ethan Clemens, | : | |
| Petitioner | : | |
| | : | |
| v. | : | |
| | : | |
| Pennsylvania State Police and | : | |
| Lieutenant Colonel Lisa Christie | : | |
| (Individually and in her capacity as | : | |
| Lieutenant Colonel of the Pennsylvania | : | |
| State Police), | : | No. 59 M.D. 2018 |
| Respondents | : | Argued: November 14, 2019 |

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
HONORABLE MICHAEL H. WOJCIK, Judge
HONORABLE CHRISTINE FIZZANO CANNON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON          FILED:  February 7, 2020

Ethan Clemens (Clemens) filed a Petition for Review (Petition) in our original jurisdiction seeking a writ of mandamus to compel the Pennsylvania State Police (PSP) and Lieutenant Colonel Lisa Christie (Lt. Col.) to reinstate Clemens as a cadet at the Pennsylvania State Police Academy (Academy).  The PSP and the Lt. Col. filed preliminary objections in the nature of a demurrer, which are now before the Court for disposition.[1]  Upon review, we sustain the PSP and the Lt. Col.'s preliminary objections in the nature of a demurrer and dismiss the Petition.

---

[1] In ruling upon preliminary objections in the nature of a demurrer, we must accept as true all well-pleaded allegations of material fact and all inferences reasonably deductible therefrom. *Evans v. Pa. Bd. of Prob. & Parole*, 820 A.2d 904, 906 n.3 (Pa. Cmwlth. 2003) (citing *Myers v. Ridge*, 712 A.2d 791, 794 (Pa. Cmwlth. 1998)).  We do not have to accept as true conclusions of

***Factual Background***

On September 14, 2015, Clemens entered the Academy as a member of the 144th class of cadets, with an anticipated graduation date of on or about March 18, 2016. Petition ¶¶ 11 & 14. To graduate from the Academy and become a PSP trooper, the cadets had to, in relevant part, attend classes and perform satisfactorily on tests pertaining to certain areas of law enforcement including traffic law. *Id*. ¶¶ 15-19. Of relevance here, the fourth traffic law examination (Traffic 4) was scheduled for November 30, 2015. *Id*. ¶ 20.

To prepare for Traffic 4, Clemens alleges that the Academy did not prohibit the use of study guides and, in fact, "even encouraged" cadets to use study guides authored by themselves or others, and the cadets were permitted to write notes in their criminal justice handbooks. Petition ¶¶ 23-24. On the evening before Traffic 4, Clemens alleges that he obtained from another cadet in his class a study guide for the test, which was a copy of handwritten notes. *Id*. ¶¶ 25-26. Clemens "looked only at the first page of the study guide" because that page contained material "similar to the information presented at the review session provided by [his] instructor." *Id*. ¶ 27. Clemens "took some notes on a piece of notebook paper" from the first page of the study guide and returned it to the cadet, though he prepared for Traffic 4 by relying on his own notes. *Id*. ¶ 28. Clemens alleges that he did not use any other study guides for Traffic 4. *Id*. ¶ 29.

After taking Traffic 4, Clemens alleges that in mid-December 2015, a PSP officer visited one of his classes and held up to the class a "cheat sheet" for Traffic 4 that had been found in the hallway at the Academy. Petition ¶¶ 31 & 39.

law, unwarranted inferences, argumentative allegations or expressions of opinion. *Id*. "The test is whether it is clear from all of the facts pleaded that the pleader will be unable to prove facts legally sufficient to establish his or her right to relief." *Id*.

The PSP officer asked the class who "had been in possession of" the cheat sheet. *Id.* ¶ 32. A few weeks later, another PSP officer addressed the cadets in the class again about the cheat sheet and indicated that "anyone with knowledge of [it] should come forward" while several other PSP members inspected the cadets' books. *Id.* ¶ 33. "During this time period, at least one cadet approached one of the PSP officers who [had] spoken to the 144th [c]lass about the [cheat sheet], showed study guides to that officer, and confirmed that such study guides were permissible, and not what was being investigated." *Id.* ¶ 34.

After the New Year holiday, the Academy had an assembly with the cadets of the 144th class in the auditorium. Petition ¶ 35. At the assembly, the Lt. Col. and another PSP officer addressed the cadets about the cheat sheet. *Id.* ¶ 36. The Lt. Col. indicated that "if no one came forward with information about the [cheat sheet] by 4pm [sic], the PSP would interview and polygraph all the cadets in the 144th [c]lass." *Id.* The cadets were restricted to the Academy until further notice, they were not allowed outside contact for three days, and the PSP staff confiscated their phones and books. *Id.* ¶ 37. Shortly after the assembly, Cadet Vogle admitted that the cheat sheet belonged to him and he was dismissed, along with another cadet connected to the cheat sheet. *Id.* ¶¶ 38 & 44. After Cadet Vogle came forward, the PSP conducted an internal investigation and interviewed every cadet in the 144th class with respect to "cheating." *Id.* ¶ 41.

In his Petition, Clemens alleges that he never saw, used, or discussed the content of the cheat sheet before sitting for Traffic 4. Petition ¶ 40. Clemens further alleges that during his interview with the PSP, he was shown the cheat sheet and "denied any use of, or access to, that sheet[,]" though he disclosed his use of the study guide, which was "wholly different" from the cheat sheet. *Id.* ¶ 43. Clemens

3

alleges that about a month before graduation, on February 4, 2016, he met with two PSP captains but was not afforded the opportunity to defend himself or have representation present, nor was any evidence presented or discussed. *Id*. ¶¶ 54-56. Rather, Clemens alleges that the meeting had a "pre-determined outcome," which was to force Clemens to sign the "pre-prepared termination" letter dated February 11, 2016. *Id*. ¶¶ 51 & 56. PSP publicized the names of the graduating cadets, which did not include Clemens. *Id*. ¶ 57.

Thereafter, the Commonwealth's Office of Inspector General (OIG) conducted an investigation of the cheating at the Academy and published its findings in a report made public in February 2017.[2] Petition ¶¶ 61 & 64. The OIG's report found that the problem at the Academy was not the cheating by the cadets but the policies of the "PSP, its staff and instructors." *Id*. ¶ 73. Based on the foregoing allegations of fact, Clemens brings two claims against the PSP and the Lt. Col. in his Petition relating to his discharge.

_____

[2] Specifically, the OIG report stated, in relevant part:

> [t]he evolved culture within the Academy up to the 144th [c]adet [c]lass appears to have permitted the sharing within cadet classes and between cadet classes of information concerning Academy examinations, in some cases questions and answers. This is shown through some of the so-called "study guides" that the OIG found during its review, some of which members of earlier Academy classes passed to members of the 144th [c]adet [c]lass. Because over time the Academy rarely changed examination questions and correct answers, this essentially transformed some study guides into cheat sheets for future Academy classes. . . . It is unclear to the OIG whether the PSP investigators who initially reviewed the [c]adets' actions were aware of, and appreciated, this culture at the time of their investigations. . . .

Petition Ex. A, OIG Investigative Report at 33-34.

4

In Count I, Clemens alleges wrongful discharge in violation of the public policy embodied in PSP Field Regulation (F.R.) 1-2, Section 2.02 (5/16/2017), requiring members to be responsible for their own acts, and asks this Court for a writ of mandamus to compel the PSP and the Lt. Col. to withdraw his termination and permit him to rejoin as a cadet in the next class at the Academy. Petition ¶¶ 77-78 & 89. Alternatively, in Count II, Clemens alleges a claim under 42 U.S.C. § 1983 (Section 1983) for deprivation of his liberty interest in reputation secured by the 14th Amendment to the United States Constitution, U.S. Const. amend. XIV, § 1, without due process of law and seeks a name-clearing hearing. *Id*. ¶¶ 91, 104 & 106.

The PSP and the Lt. Col. responded by filing three preliminary objections in the nature of a demurrer. First, the PSP and the Lt. Col. assert that Clemens cannot prevail on his claim for wrongful discharge because he does not have a clear legal right to the relief he seeks, which is to require the PSP and the Lt. Col. to withdraw his discharge. *See* Preliminary Objections by [Respondents] to the Petition for Review (Objections) ¶ 13. Next, the PSP and the Lt. Col. argue that Clemens cannot prevail on his claim for deprivation of liberty interest because he failed to "assert any actual harm that has occurred to his reputation" and he cannot demonstrate that he has a clear right to a name-clearing hearing when he alleges that he had an opportunity before the PSP officials to refute the charge of cheating. *Id*. ¶¶ 19, 23 & 27. Third, the PSP and the Lt. Col. argue that Clemens' Section 1983 claim for deprivation of liberty interest cannot proceed because the PSP and the Lt. Col. are not subject to suit and Clemens did not plead any facts showing the Lt. Col.'s personal involvement. *Id*. ¶¶ 33, 34, & 39-40. In response, Clemens opposed the PSP and the Lt. Col.'s preliminary objections. *See* Answer of [Petitioner] in

5

Opposition to the Preliminary Objections by [Respondents] to the Petition for Review.

Upon review, we agree that Clemens' claim for wrongful discharge cannot proceed because he asks this Court to direct the PSP and the Lt. Col. to reverse action taken in the exercise of discretion, which we cannot do, and additionally he fails to allege a clear legal right to relief required for his writ of mandamus claim to proceed. Further, Clemens' Section 1983 claim for deprivation of liberty interest in reputation against the PSP and the Lt. Col. cannot proceed as a matter of law because he fails to allege facts showing harm to his reputation to support his claim.

### *Count I: Wrongful Discharge*

First, Clemens asserts a claim for wrongful discharge in violation of a public policy embodied in Field Regulation 1-2, Section 2.02, which requires members to be responsible for their own acts and not attempt to shift to others the burden of responsibility for executing or failing to execute a police duty. Petition ¶¶ 76-87. Clemens argues that the OIG report identified that the problem giving rise to the cadets' cheating was not the cadets' actions but, instead, the Academy culture where PSP instructors and staff "routinely" provided cadets with the questions and answers to the questions that were to appear on upcoming examinations and the failure of the PSP instructors and staff to modify examinations for successive Academy classes. *Id.* ¶¶ 81-84. Clemens argues that the PSP and the Lt. Col. arbitrarily exercised their discretion and improperly shifted their violations and failures to Clemens, and other cadets like him, when they terminated him for cheating, but he did not cheat. *Id.* ¶ 87. Clemens contends that allowing the discharge to stand violates the public policy incorporated in Field Regulation 1-2,

Section 2.02. *Id*. ¶ 86. Clemens further contends that he lacks an adequate remedy at law and, therefore, asks this Court to issue a writ of mandamus to compel the PSP and the Lt. Col. to withdraw Clemens' discharge and permit him to rejoin as a cadet in the next class at the Academy. *Id*. ¶ 89.

Mandamus is an extraordinary remedy that compels the official performance of a ministerial act or a mandatory duty. *Nickson v. Pa. Bd. of Prob. & Parole*, 880 A.2d 21, 23 (Pa. Cmwlth. 2005); *Evans v. Pa. Bd. Prob. & Parole*, 820 A.2d 904, 914 (Pa. Cmwlth. 2003). This Court has previously explained:

> [I]n an action in mandamus *involving an administrative agency's exercise of discretion*, we may only direct the agency to perform the discretionary act; *we may not direct the agency to exercise its judgment or discretion in a particular way or direct the retraction or reversal of action already taken*. A writ of mandamus may be issued only where there is a *clear legal right in the [petitioner]*, a corresponding duty in the [respondent], and lack of any other appropriate and adequate remedy. The purpose of mandamus is not to establish legal rights, but to enforce those rights already established.

*Evans*, 820 A.2d at 914-15 (emphasis added).

Here, the relief sought by Clemens in his wrongful termination claim is to "compel" the PSP and the Lt. Col. to withdraw the termination of Clemens and permit him to rejoin as a cadet at the Academy. Petition ¶ 89. We cannot, however, order the reversal of Clemens' alleged termination and reinstate Clemens as a cadet because we cannot direct the reversal of action already taken within the exercise of the administrative agency's discretion. *See Evans*, 820 A.2d at 915.

Section 205(f) of The Administrative Code of 1929 (Code), Act of April 9, 1929, P.L. 177, *as amended*, 71 P.S. § 65(f), governs Clemens' employment as a new cadet and provides:

7

> *All new cadets* and troopers shall serve a probationary period of eighteen months from the date of original enlistment, *during which time they may be dismissed by the* [PSP] *Commissioner* for violations of rules and regulations, incompetency, and inefficiency without action of a court martial board or the right of appeal to a civil court.

(Emphasis added.) As plainly stated, Clemens as a cadet, or probationary employee, "may" be dismissed by the PSP Commissioner for violations of rules and regulations *without* action of a court martial board or the right of appeal to a civil court. *Id.* By use of the term "may" and by providing for no review of the PSP Commissioner's decision via hearing or otherwise, the legislature indicated its intention that "the decision to discharge has been *committed to the discretion of the employer*[,]" as the employee has no property right in continued employment. *Pipkin v. Pa. State Police*, 693 A.2d 190, 193 (Pa. 1997) (emphasis added); *accord Graham v. Pa. State Police*, 634 A.2d 849, 851 (Pa. Cmwlth. 1993); *Marino v. Pa. State Police*, 486 A.2d 1033, 1034 (Pa. Cmwlth. 1985) (holding that a new cadet does not have a property interest in continued employment, and therefore, the legislature did not wish to afford cadets an opportunity to be heard thereby leaving the decision to terminate to the discretion of PSP without review by this Court). Because the decision to discharge a cadet has been committed to the discretion of the PSP Commissioner, this Court cannot "direct the retraction or reversal of action already taken," that is, we cannot order a reversal of Clemens' termination and a reinstatement of his employment as a cadet in a mandamus action. *See Evans*, 820 A.2d at 915; *Hunt v. Pa. State Police*, 400 A.2d 907, 909 (Pa. Cmwlth. 1979) (explaining that once an agency has exercised its discretion, "a party [that] is dissatisfied with the result may not seek to compel a

8

different result through mandamus; for mandamus does not lie to review a discretionary act, nor to compel a particular result in a process involving the exercise of discretion").

Nevertheless, Clemens argues that the mandamus remedy is broader than the PSP and the Lt. Col. assert. Clemens' Brief at 14. Clemens contends that this Court can grant him mandamus relief because the courts will review the exercise of a government actor's discretion where it is arbitrary or fraudulently exercised or based upon a mistaken view *of the law* or to determine if constitutional rights have been violated.[3] *Id*. at 15. Clemens asserts that his claim for wrongful discharge shows that the PSP and the Lt. Col. acted "arbitrarily and under *mistaken view of the law* in discharging him in violation of a *clear mandate of public policy*." *Id*. at 16 (emphasis added).

Clemens does not cite any law to support his assertion that he has a clear legal right to relief. Instead, Clemens relies on the PSP Field Regulation to support his assertion that it establishes a "clear mandate of public policy."

Section 2.02 provides, in pertinent part:

> Members shall also be held responsible for the proper performance of all duties assigned to them; the appropriate use of delegated authority; and strict adherence to the rules, regulations, and directives promulgated by the Department. Ignorance of the rules, regulations, and directives shall not be considered an excuse or justification for any violation of such by a member. *Members shall be responsible for their acts and shall not attempt to shift the burden of responsibility for executing or failing to execute a lawful order or police duty. . . .*

---

[3] We note that in Count II, Clemens asks for mandamus relief for the violation of his liberty interest in reputation but he fails to allege facts to support this claim. *See* discussion *infra* pp. 10-15.

9

PSP F.R. 1-2, § 2.02 (emphasis added). The purpose of the PSP Field Regulation is to "establish *policy and guidelines* regarding duty requirements for the conduct of members." PSP F.R. 1-2, § 2.01 (emphasis added). The Field Regulation is, by its terms, a "policy and guideline[]" developed by the PSP, an executive agency, to govern the conduct of its members; therefore, it does not and cannot confer a legal right to probationary employees. *See Shore v. Dep't of Corr.*, 168 A.3d 374, 386 (Pa. Cmwlth. 2017) (explaining that allegations made by inmate that the Department of Corrections failed to follow its regulations or internal policies cannot support a claim based on a vested right or duty); *see also Tindell v. Dep't of Corr.*, 87 A.3d 1029, 1034-35 (Pa. Cmwlth. 2014) (rejecting argument that policies and regulations adopted by agency create enforceable rights because "[a]dministrative regulations are not statutes or constitutional provisions"). Clemens has not established a clear legal right to relief necessary for his mandamus action for wrongful termination to proceed. For the foregoing reasons, we sustain the PSP and the Lt. Col.'s preliminary objection as to Count I of the Petition asserting wrongful discharge. We now turn to Clemens' alternative claim.

### Count II: Section 1983 Claim-Deprivation of Liberty Interest

Alternatively, in Count II of his Petition, Clemens asserts a claim under 42 U.S.C. § 1983[4] for a deprivation of his liberty interest in his reputation without due process as required by the 14th Amendment to the United States Constitution, U.S. Const. amend. XIV, § 1. Petition ¶¶ 91-104. Clemens asserts that the PSP and

---

[4] To maintain an action under Section 1983, Clemens must allege that a person or persons deprived him of his constitutional rights while acting under color of state law. *Robles v. Pa. Dep't of Corr.*, 718 A.2d 882, 883 (Pa. Cmwlth. 1998). A Section 1983 action does not create any substantive rights, but merely serves as a vehicle or device by which a citizen is able to challenge conduct by a state official whom he claims has deprived him of his civil rights. *Id*.

the Lt. Col. created a "false and stigmatizing impression" of him as a "cheater, or dishonest person, in connection with his termination" from the Academy, thereby depriving his liberty interest in reputation and entitling him to "due process, in the form of, at a minimum, a name-clearing hearing." *Id*. ¶¶ 96 & 106.

To state a claim under 42 U.S.C. § 1983, a petitioner "must establish that [he was] deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999). The 14th Amendment of the United States Constitution[5] requires due process where a state seeks to deprive a person of a life, liberty or property interest. *Pa. Game Comm'n v. Marich*, 666 A.2d 253, 255 (Pa. 1995). Reputational interests alone are insufficient to invoke federal due process protections. *R. v. Dep't of Pub. Welfare*, 636 A.2d 142, 149 (Pa. 1994) (citing *Paul v. Davis*, 424 U.S. 693 (1976)). A petitioner can establish a deprivation of liberty interest in reputation if he makes a showing of a "reputational stigma plus deprivation of another protected right or interest." *Hill v. Borough of Kutztown*, 455 F.3d 225, 236 (3d Cir. 2006). The "stigma" is the creation and dissemination of a false and defamatory impression and the "plus" is the termination or the "alteration or extinguishment" of a right or status previously recognized by law. *Id*. The stigma-plus test has been applied in the public employment context to mean that when an employer creates and disseminates a false and defamatory impression about the employee in connection with his termination, it deprives the employee of a protected liberty interest. *See Smith v. Engler* (E.D. Pa., No. 15-6542, filed June 14, 2018), slip op. at ___, 2018 WL

---

[5] Section 1 of the 14th Amendment provides, in relevant part, that: "nor shall any state deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.

11

2984861, at *13 (citing *Hill*).  The right that is accorded is an opportunity to refute the charges and clear one's name.  *Id*.  Although this Court has not addressed a name-clearing hearing as applicable relief, the Third Circuit held that a public employee who is defamed in the course of being terminated or constructively discharged can bring a claim for a post-termination name-clearing hearing and satisfies the stigma-plus test even if, as a matter of state law, he lacks a property interest in the job he lost.  *See Hill*, 455 F.3d at 238; *see also Graham v. Johnson*, 249 F. Supp. 2d 563, 568 (3d Cir. 2003) (concluding that a lack of protectible property interest in employment with the Philadelphia Police Department does not preclude employee from bringing a claim for a post-termination name-clearing hearing).

However, to satisfy the stigma-plus test, Clemens must allege facts showing harm to his reputation, that is, a false and stigmatizing statement about him was published or disseminated.  *See Hill*, 455 F.3d at 236 (explaining that to satisfy the "stigma" prong of the test, it must be alleged that the purportedly stigmatizing statement(s) . . . were made publicly")).  Clemens alleges that a false and stigmatizing impression of him as a cheater is memorialized in his termination letter and file, but this is not sufficient to support the publication requirement.  *See Bishop v. Wood*, 426 U.S. 341, 348 (1976) (explaining that the reasons for the discharge must be made public to form a basis for the conclusion that the employee's "good name, reputation, honor, or integrity" was impaired to support a deprivation of liberty interest claim).  Although Clemens cites to cases from other federal circuit courts to support his position,[6] the United States Court of Appeals for the Third

---

[6] *See, e.g., Brandt v. Bd. of Coop. Educ. Servs.*, 820 F.2d 41, 45 (2d Cir. 1987) (explaining that if the plaintiff "is able to show that prospective employers are likely to gain access to his personnel file and decide not to hire him, then the presence of the charges in his file has a damaging effect on his future job opportunities[,]" and therefore, the "presence of the charges in his personnel file coupled with a likelihood of harmful disclosure" are sufficient to meet the publication

12

Circuit[7] has explained that simply depositing material into an employee's personnel file does not meet the publicity requirement, as there must be a dissemination of the contents of the personnel file to prospective employers, or others, to support a deprivation of liberty interest claim. *See Copeland v. Phila. Police Dep't*, 840 F.2d 1139, 1148 (3d Cir. 1988) (explaining that to succeed on a claim based on deprivation of liberty interest, the petitioner must establish that the reason for his termination was made public); *see also Cooley v. Pa. Hous. Fin. Agency*, 830 F.2d 469, 473-75 (3d Cir. 1987), *abrogated on other grounds by Foster v. Chesapeake Ins. Co.*, 933 F.2d 1139, 1148 (3d Cir. 1991) (holding that a termination letter placed in an employee's personnel file is not sufficient to support a deprivation of liberty

---

requirement); *see also Sciolino v. City of Newport News*, 480 F.3d 642, 650 (4th Cir.) *cert. denied*, 552 U.S. 1076 (2007) (holding that the plaintiff must allege a likelihood that prospective employers or the public at large will inspect the personnel file).

We further note that Clemens cites *Morgan v. Covington Township*, 648 F.3d 172, 181 (3d Cir. 2011), and asserts that the "Third Circuit cited *Brandt*, with apparent approval, for the proposition that the placement of a termination letter in the plaintiff's personnel file can constitute public disclosure or 'publicity' only where the plaintiff can show the file is likely to be disclosed to prospective employers." Clemens' Brief at 32 n.10. We disagree as *Morgan* does not concern a personnel file and cites to *Brandt* only for the proposition that the plaintiff had to produce evidence to show an instance of publication. In *Morgan*, the Third Circuit affirmed the district court's finding that summary judgment was appropriate because Morgan failed to produce evidence to "identify any instance in which any defendant publicly accused him of a crime." *Morgan*, 648 F.3d at 175. In so concluding, the Third Circuit relied on *Hill*, 455 F.3d at 236, a later decided Third Circuit case, and stated that "Morgan would have to show that [the defendant] publicized a false, stigmatizing statement about him" to withstand summary judgment. *Morgan*, 648 F.3d at 181.

[7] We are not obligated to follow the decisions of federal district and intermediate appellate courts on issues of federal law as they are persuasive precedent. *Commonwealth v. Hicks*, 208 A.3d 916, 936 n.13 (Pa. 2019); *Hall v. Pa. Bd. of Prob. & Parole*, 851 A.2d 859, 863-65 (Pa. 2004); *West Chester Area Sch. Dist. v. A.M.,* 164 A.3d 620, 630 (Pa. Cmwlth. 2017). Though we are not bound to follow the Third Circuit Court of Appeals, "when possible, it is appropriate for a Pennsylvania appellate court to follow the Third Circuit's ruling on federal questions to which the U.S. Supreme Court has not yet provided a definitive answer." *West Chester Area Sch. Dist.*, 164 A.3d at 630.

13

interest claim because there must be an actual dissemination of the defamatory letter to prospective employers). Clemens alleges no facts to show that the allegedly false and stigmatizing statements, that he was discharged for cheating, were published to prospective employers or others.

Clemens does allege that the statements contained in his personnel file are "likely" to be publicized in response to prospective employers or to those making requests under the Right-to-Know Law.[8] Petition ¶¶ 58, 98 & 100. However, these allegations, if proven, would not establish that his reputation had actually been harmed but, instead, are merely speculative and show only that Clemens' reputation could be harmed in the future upon occurrence of the publication. *See Cooley*, 830 F.2d at 473-75 (holding that termination letter placed in employee's personnel file is not sufficient to support deprivation of liberty interest claim as there must be actual publication); *Copeland*, 840 F.2d at 1148.

Additionally, Clemens alleges:

> PSP announced the 'cheating scandal,' to the public, and subsequently announced the identities of those cadets in the 144[th] [c]lass who graduated from the Academy. Those knowing Clemens was a cadet in the 144[th] [c]lass, reviewing the graduation list and finding Clemens' name absent, knew that Clemens was terminated, or resigned, in connection with the 'cheating scandal.'

Petition ¶ 101; *see also* Petition ¶ 57 (alleging "[t]hose cadets who had been dismissed or resigned in connection with the 'cheating scandal,' like Clemens, could be determined by their absence from that list"). These allegations, if proven, would

---

[8] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104.

not establish that a false and stigmatizing impression of Clemens was published, and therefore, he fails to allege harm.

In other words, Clemens has not alleged facts that would establish that PSP published a list of cadets who failed to graduate because they were found guilty of cheating or were forced to resign in connection with cheating even though they did not cheat. Rather, these facts, if proven, show only that (1) an announcement was published about the cheating scandal involving the 144th class, and (2) subsequently, a list was published identifying the names of the cadets in the 144th class that graduated from the Academy, which did not include Clemens. Petition ¶¶ 50 & 59. Because Clemens was not identified in the graduation list or the announcement regarding the cheating scandal, those publications did not, in any way, relate to Clemens personally, directly connect Clemens to the cheating scandal, or provide any facts relating to Clemens' discharge. *Cf. Hill*, 455 F.3d at 239 (explaining that if the defamation occurred in connection with the employee's discharge, then this is sufficient to meet the "plus" prong); *see* Petition ¶¶ 14, 51 & 56-57. For the foregoing reasons, we sustain the PSP and the Lt. Col.'s preliminary objections as to Count II of the Petition asserting a deprivation of liberty interest in reputation.[9]

Because we sustain the PSP and the Lt. Col.'s preliminary objections in the nature of a demurrer as to Counts I and II of Clemens' Petition, the Petition is dismissed.

_____
CHRISTINE FIZZANO CANNON, Judge

---

[9] Due to our disposition on the two preliminary objections addressed herein, we do not reach the preliminary objection that the Section 1983 claim cannot proceed against the PSP and the Lt. Col. because they are not subject to suit.

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Ethan Clemens,                                    :
                Petitioner              :
                                                            :
                v.              :
                                                              :
Pennsylvania State Police and          :
Lieutenant Colonel Lisa Christie       :
(Individually and in her capacity      :
as Lieutenant Colonel of the           :
Pennsylvania State Police),             :      No. 59 M.D. 2018
                Respondent            :

## O R D E R

AND NOW, this 7th day of February, 2020, the preliminary objections in the nature of a demurrer filed by the Pennsylvania State Police and Lieutenant Colonel Lisa Christie as to Counts I and II of Ethan Clemens' Petition for Review (Petition) are sustained, and the Petition is dismissed.

_____
CHRISTINE FIZZANO CANNON, Judge